THE PEOPLE v. DENNIS McCULLOUGH, IMPLEADED WITH JOHN WILEY AND JAMES MURRAY.

*Criminal law—Information for manslaughter—Amendment—Confessions—Joinder of respondents—Evidence of co-respondent.*

1. An information charging that the respondent did, at a certain time and place, with force and arms, feloniously kill and slay the deceased, charges a felonious killing, and under it the people may show that death resulted from an assault or wound inflicted by the respondent, and it is a good information at the common law. The amendment of such an information by charging an assault upon, and the beating, bruising, and wounding of, the deceased by the respondent, only renders the charge more *specific*, and in no way changes the offense.

2. Where officers subject a prisoner to a vigorous examination and cross-examination, and inform him that a stone which he threw hit and killed the deceased,—which fact he accepts as true, although ignorant, as he claims, of its truth from his own knowledge,—and he is told by the officers that he had better tell the whole truth about it, and writes a letter to his father asking for assistance, in which he admits the alleged facts as to the killing, such letter is not admissible in evidence against the respondent.

3. Three respondents were jointly informed against for manslaughter, and demanded separate trials. The theory of the prosecution was that the deceased came to his death by being hit with a

stone thrown by *one* of the respondents. No concert of action was shown between them, and, at the time the stone was thrown, the other two were some distance from the one who threw it, and were nearer to the deceased, and, according to the testimony of some of the witnesses, had their hands raised, but the witnesses did not testify that they struck the deceased. The testimony failed to show any marks or bruises upon the person of the deceased. And it is held that it is the duty of the prosecution to either put the two respondents on trial first, or tender them as witnesses for the people on the trial of the third respondent, and thus enable him to cross-examine them, if he so desires.

Exceptions before judgment from Jackson. (Peck, J.) Argued May 1, 1890. Decided May 16, 1890.

Respondent was convicted of manslaughter. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*Barkworth & Cobb,* for respondent, contended:

1. The amendment to the information introduced a new element, and possibly exposed respondent to a conviction not possible under the original information; citing *People v. Adams,* 52 Mich. 24.

2. The letter written to respondent's father was not admissible. It could be of no greater value than the conversation from which it sprang; and it seems strange that respondent's guilt can be made to depend, in any degree, upon statements made under such circumstances as surrounded him at the time; citing *People v. Swetland,* 77 Mich. 53.

3. There is nothing in our statute changing the common law rule against the misjoinder of defendants, and if Murray and Wiley were actually guilty of inflicting the injury, McCullough should be exonerated, and *vice versa.* It was therefore error to join them in the same information, and thus prevent McCullough from securing their testimony; citing 1 Archb. Cr. Pr. & Pl. 71; 1 Whart. Am. Cr. L. § 430.

*B. W. Huston,* Attorney General, for the people.

*James A. Parkinson,* Prosecuting Attorney, for the people, contended:

1. Respondent's counsel insist that Wiley and Murray cannot be guilty of manslaughter; that they are not responsible for McCullough's act; that he is not properly chargeable jointly with them; and that, as their's is the lesser offense, they should have been tried first for assault and battery, and then they would be competent witnesses. This argument assumes—

a—That no further testimony can or will be adduced against Wiley and Murray.

b—It denies implicitly the right or duty to use the more certain case as a means of developing all the facts in the other,—a course rendered peculiarly advisable by the evident reluctance of those who were present and could tell to disclose their knowledge.

c—That the offense was not joint.

The first two propositions, it is claimed, involve matters of discretion which belong to the prosecuting officer to exercise, unless, indeed, he be guilty of a clear abuse of such discretion. The last one we are not prepared to concede.

a—The act in which the parties were engaged was unlawful.

b—Had no death resulted, or had the stone thrown by defendant not actually hit the deceased, we insist all three of the defendants would have been jointly guilty of assault.

c—If all three were jointly engaged in the commission of an unlawful act, not a felony, all are responsible for the results, certainly so if the results could have reasonably been anticipated; and death resulting therefrom is manslaughter.

The prosecution has the right to try these questions in the case against Wiley and Murray, and no determination of them in this prosecution can affect the right to try and punish those respondents. It is not contended that Wiley and Murray cannot be convicted of manslaughter. Their trial has been held in abeyance simply to await the determination of this case in this Court.

The conspiracy even to whip or assault Cunningham need not have been established by actual, previous assent after consultation. It is enough that by a common consent—by a common impulse—they acted in concert in unlawfully assaulting deceased. If so, each is liable for the acts of the other, and Wiley and Murray are guilty; citing *State v. Munchrath*, 78 Iowa, 268.

Long, J. The respondent Dennis McCullough was informed against jointly with respondents John Wiley and James Murray, and, on a separate trial in the Jackson

circuit court, was convicted of the crime of manslaughter.

After the jury were impaneled, counsel for the defendant requested the prosecuting attorney to proceed with the trial of defendants Wiley and Murray, he having in his opening stated to the jury that Murray and Wiley were not accused of actual participation in or complicity with the acts of McCullough, which it was claimed produced the death of the deceased. This was refused, and the prosecuting attorney asked leave to amend the information, which was granted. The information filed charged that the three respondents—

"On April 27, 1889, at the city of Jackson, in said Jackson county, then and there, with force and arms, feloniously did kill and slay one William Cunningham, contrary to the statute in such case," etc.

By the amendment there was indorsed after the words "with force and arms" the following,—

"In and upon one William Cunningham there being, did make an assault, and him, the said William Cunningham, did then and there beat, bruise, wound, and ill treat, and then and there, with force and arms aforesaid."

The remaining portion of the information was unchanged. It is urged that this amendment presented a new offense, for which the respondent had not had or waived examination.

Manslaughter, at the common law, very generally consisted of acts of violence of such a nature that indictments for murder and manslaughter were interchangeable by the omission or retention of the allegation of malice, and of the technical name of the offense. In a vast majority of the cases a very simple allegation would be enough for the protection of the prisoner. But there may be manslaughter, as well as murder, committed, where there is no assault, no battery, and no wound inflicted, and the information, in a case of this kind, must

be varied to meet the less usual facts. Where the offense of manslaughter was involuntary homicide, and involved no assault, but arose out of some negligence or fault from which death was a consequential result, and sometimes not a speedy one, the ordinary forms were not sufficient, and the information had to be framed upon the peculiar facts, and could convey no adequate information without this. 2 Bish. Crim. Proc. § 538; *People v. Olmstead*, 30 Mich. 438.

The original information, as filed in this case, charges a felonious killing, and under it the people would have had the right to introduce evidence showing that death resulted from an assault or wound inflicted, and it is a good information for manslaughter at the common law. The mere fact that the words before quoted were inserted did not in any manner change the offense. It only made it more specific. Under the theory of the prosecution, as to the manner in which the death was caused, the original information was sufficient. It was claimed on the trial that the deceased came to his death by a blow from a stone thrown by the respondent; and whether it was thrown recklessly, with no intent to produce death or great bodily harm, or with intent to hit the deceased, did not change the offense, as death caused by either mode might be charged as manslaughter,—one by recklessness and negligent acts, and the other by more direct violence. Death immediately ensued, and the theory of the prosecution is that it was caused by the respondent in throwing the stone, which struck the deceased and killed him. It was not error to allow the amendment.

The record does not purport to set out all of the evidence. It appears, however, that the people introduced evidence tending to show that on the night of April 27, 1889, John Farrell, John Devine, Mathew Eagen, and the respondents, Wiley, Murray, and McCullough, left

the store of Mr. Lawrence Farrell, on East Main street, in the city of Jackson, about 11 o'clock at night, and went westerly until arriving at Perrine street, crossing East Main street at right angles. Murray and Wiley had been drinking to some extent, and were somewhat under the influence of liquor. McCullough had only drank two glasses of beer during the evening, and was apparently sober and all right. It does not appear by this record that either of the other parties had drank anything. As they proceeded along the street, they walked two and two, McCullough and Eagen in advance, Farrell and Devine next, and Murray and Wiley last. Just before arriving at the corner of East Main and Perrine streets, they met the deceased, a colored boy, who was going eastward on the walk on East Main street, when some one of the six parties—it is not shown who—said, "There's a coon," and after he had got along to Murray and Wiley they stopped him. He moved out into the gutter, and attempted to go by them. They moved along in front of him, going across Perrine street towards the east. When Murray, Wiley, and the deceased were some 35 or 40 feet from the corner where defendant McCullough and the other parties had stopped, McCullough picked up a stone from the ground, and threw it, or tossed it, as some of the witnesses say, over in the direction of Murray, Wiley, and the colored boy. This stone struck the ground in the middle of Main street; and some distance from the parties. McCullough picked up another stone, and threw or tossed that. Just after this stone was thrown, deceased was seen to fall. At this time Murray and Wiley were near him, and some of the parties, Murray, Wiley, or deceased, had their hands up, but none of the witnesses testify to having seen Murray or Wiley strike the deceased.

The record returned here does not state how the deceased

came to his death, except as above. There is nothing in the record showing whether any marks or bruises were found on the deceased, or whether any *post mortem* examination was had. Upon this branch of the case we are left entirely in the dark. It appears, however, that, as soon as deceased fell, Murray and Wiley walked rapidly away, or ran away, from the scene. Some of the neighbors there heard the noise, whether of Murray and Wiley or the deceased is not stated; but it does appear that Murray and Wiley were jumping around deceased, apparently attempting to frighten him, and were making some noise, but just what was said or done by them is not made apparent. When the neighbors arrived on the scene, Murray and Wiley had gone away, and the defendant McCullough and the other parties had gone on their way home.

On the trial, the prosecution called the witnesses Farrell, Eagen, and Devine, who were all present at the time of the affray. They also called Mr. and Mrs. Roby and other parties, who resided on the street, who testified to having heard the noise, and to seeing the parties disperse. The respondent McCullough was arrested Sunday by a police officer, and, after some conversation, was released, and rearrested on the Monday or Tuesday following, taken to the police station, and locked up. The chief of police, Mr. Eugene D. Winney, and Capt. Boyle, of the police force, visited McCullough at the station. They were called as witnesses by the prosecution, and asked to state what was said by McCullough at the station after his arrest. The court granted the counsel for the defendant the right to inquire of these officers the circumstances under which these statements were made, before the witnesses were allowed to state the conversation had with respondent. Such facts appeared from this cross-examination that the court excluded the testimony.

It appeared, however, that during the time these police officers had the respondent in custody there in the lock-up Capt. Boyle, under McCullough's dictation, wrote a letter to his (McCullough's) father, who resided at Lima, Ohio. This letter was read over to McCullough, and he signed it. The court permitted the prosecution to put this letter in evidence. It reads as follows:

"JACKSON, MICH., April 30, 1889.
"JOHN MCCULLOUGH,
                "Lima, Ohio.
   "*Dear Father:* I am in trouble, and I want you to assist me all you can. I was out Saturday night with a drunken crowd, and they got into a row with a colored man, and I picked up a stone, and threw it. It struck the man, and killed him. I want you to get letters from Mayor McComb and Judge Ritchie showing my good character at my home, and do everything you can for me.                 From your son,
                                "D. MCCULLOUGH."

It appears that during the conversation, and at the time of writing this letter, the respondent was very much agitated, and had been told that the stone thrown by him killed the deceased. He was told by these officers that he had better tell the truth about it. They had got another written statement from him before the letter was written. It also appears that while the letter was being written the counsel for defendant was in an outer office, waiting to see him, and was not permitted to do so until the letter and other statement were secured. It is not shown that this letter was ever sent to its destination, and apparently it was not, as it was found in the hands of the prosecution, and produced by them on the trial.

If the court was correct in excluding the testimony of these officers as to what was said and done there on that day, then it was error to admit this letter in evidence. The court was in error in permitting the letter to be put in evidence. The circumstances under which it was

procured do not justify its use as evidence against the respondent. If the testimony of the respondent is true, they took him into the room, pulled down the curtains, and commenced a vigorous system of examination and cross-examination of him, telling him that it was the stone which he threw that killed the colored boy. He accepted this as true, though he says that he did not know whether it was so or not. That he did not intend to hit or hurt any one, and only threw it or tossed it over in that direction to attract the attention of Murray and Wiley.

The circumstances are such that the court was not warranted in permitting the jury to take this letter, and construe it as a confession of the defendant that the stone he threw killed the deceased. He did not know, and no one of the other parties who stood by him at the time it was thrown pretend to state, that the stone hit the deceased, except from the inference that the deceased was seen to fall immediately after the stone was thrown. But Murray and Wiley were there with the deceased, and some of them had their hands up. Whether either Murray or Wiley struck him or not is not shown, though they were following him up, and frightening him, and dancing around him in a boisterous manner.

The conduct of police and other officers in procuring confessions to be made by prisoners whom they have in charge has often been remarked upon by this Court. Where such statements are voluntarily made, and no threats made or inducements held out to obtain such confessions, they may be used in evidence against the accused; but they must be voluntary, and without any influence being exerted by the officer, either of threats, promise, artifice, or duress.

This error alone is sufficient to reverse the case; but,

81 MICH.—3.

inasmuch as it must be remanded for retrial, another question raised becomes of great moment.

It is insisted that the defendants Murray and Wiley should not have been joined in the information with respondent McCullough under the claim made by the prosecution in this cause, and under the circumstances as they are made to appear by this record, as it deprives the respondent McCullough of the benefit of their testimony. The parties were jointly indicted. They took separate trials, as was the right of any one of them under the statute. The effect of thus joining all the defendants in one information, charging them jointly with the commission of the offense, is to deprive the respondent of the testimony of the other two. That is, the respondent could not call them as witnesses in his behalf, and compel them to testify. *People v. Van Alstine,* 57 Mich. 70. The rule is well settled that the prosecution is bound to call all the eye-witnesses to the transaction, unless the number were so great as to make the testimony merely cumulative. *People v. Swelland,* 77 Mich. 53. The defendants Murray and Wiley, having taken separate trials, were competent witnesses for the people. It is said in *People v. Wright,* 38 Mich. 745:

"An accomplice is a competent witness in behalf of the prosecution, and it makes no difference whether he has been convicted or not, or whether he be joined in the same indictment with the prisoners to be tried or not, provided he be not put upon his trial at the same time;" citing Rosc. Crim. Ev. 120; 1 Greenl. Ev. § 379; *Wixson v. People,* 5 Park. Crim. R. 126; *Taylor v. People,* 12 Hun, 213; 1 Bish. Crim. Proc. §§ 1079, 1080.

There is, however, no rule requiring the prosecution to call accomplices as witnesses. It is and must be largely a matter resting in the sound discretion of the prosecuting officer. It is his duty to see that the law is vindi-

cated, and the guilty brought to trial and punished, and it is as well his duty to see that the accused have a fair trial. The prosecutor could not be permitted to join all the parties present at an affray in one information, for the purpose of preventing one or any member of them being called by the one on trial as a witness in his behalf, and then himself refuse to put the parties present on the stand as witnesses for the prosecution. The theory of the prosecution in the present case is that the deceased came to his death from the stone thrown by McCullough. It is a case somewhat peculiar in its circumstances. There does not seem to have been any concert of action between McCullough, Murray, and Wiley. No conspiracy is shown to do an unlawful act. Each party seems to have been acting entirely independent of the other, so far as McCullough is concerned. In the throwing of the stone, Murray and Wiley do not seem to have been concerned, or to have had any knowledge before the deceased was struck; and, on the other hand, there is nothing in the record indicating that McCullough had anything to do with Murray and Wiley following the deceased across the street, and doing him any injury, if any injury was done him by them.

The case seems to be entirely devoid of any fact or circumstance indicating that the parties were acting in concert, but each seems to have acted entirely independent of the other, as between McCullough and the other two. If the deceased came to his death by the stone thrown by McCullough, then, under the circumstances shown upon this record, it is difficult to perceive how Murray and Wiley can be held responsible for it. If, on the other hand, the deceased came to his death by any means at the hands of Murray and Wiley, and not by the stone thrown by McCullough, it is equally difficult to understand how McCullough's act in throwing the stone

could in any manner be said to implicate him in the crime. The testimony of Murray and Wiley might have thrown some light on the matter. Their testimony would not have been merely cumulative, as they were in a position to know more of the facts than any other person present as to how the deceased came to his death.

Under the circumstances of this case, and the claim and theory of the prosecution, I think it is the duty of the prosecution to either put Murray and Wiley on their trial before McCullough's case is tried, or tender them as witnesses, so that McCullough may have an opportunity for a full cross-examination. It is true that Murray and Wiley could claim their privilege as witnesses, and refuse to testify to any matter which could in any manner tend to criminate them; but this is a matter of personal privi_lege to them, and not for the prosecution to interpose.

Some other questions are raised, and other assignments of error argued, in the brief of counsel, but we do not deem them of sufficient importance to require notice. The charge seems to have been fair to the respondent.

The verdict must be set aside, and a new trial ordered.

The other Justices concurred.

