PEOPLE *v.* WASHBURN.

1. CRIMINAL LAW—JURISDICTION OF JUSTICE OF THE PEACE—SPEEDY
   TRIAL—CONTINUANCE.
   Justice of the peace was not without jurisdiction to try case at
   a date later than 10 days after return of the warrant with the
   accused where accused was present with his counsel at time
   case was set for trial, appeared on date set for trial and,
   without questioning the jurisdiction of the court, proceeded to
   try the case on the merits, since such an adjournment or con-
   tinuance being one with the consent of the accused was one of
   which he could not complain (3 Comp. Laws 1929, § 17433).

2. MASTER AND SERVANT — INTERFERENCE WITH RELATIONSHIP BY
   THIRD PERSONS—ACCOMPLICES.
   One accused of molesting a laborer in pursuit of his lawful avoca-
   tion was properly found guilty by jury even though he did
   not directly interfere where record shows defendant was ac-
   tively engaged as leader of group of strikers for several days
   before complaining witness was interfered with by armed
   pickets who were in front of building where witness was em-
   ployed, advised local groups and consulted the pickets, and
   had prevented president of company for which witness worked
   from going to office a few days before (3 Comp. Laws 1929,
   § 17253, Act No. 328, § 352, Pub. Acts 1931).

3. CRIMINAL LAW—ACCESSORIES—TIME.
   The amount of advice or encouragement rendered by aider or
   abettor is not material if it had the effect of inducing commis-
   sion of the crime nor is the matter of time when advice, aid or
   encouragement was rendered an important element.

4. MASTER AND SERVANT — INTERFERENCE WITH RELATIONSHIP BY
   THIRD PERSONS OR LABOR UNIONS—RIGHT TO STRIKE.
   Statute penalizing one who molests or interferes or attempts to
   molest or interfere with a mechanic or other laborer in the
   quiet and peaceable pursuit of his lawful avocation makes no

distinction between representatives of a labor union and an individual although it does not affect the right of labor to strike (Act No. 328, § 352, Pub. Acts 1931).

5. SAME—CONSTITUTIONAL LAW—CLASS LEGISLATION—CIVIL RIGHTS. Claim that statute penalizing molestation or interference with mechanic or other laborer in the quiet and peaceable pursuit of his lawful avocation is unenforceable because of indefiniteness and because it violates State and Federal Constitutions as to class legislation and as to civil rights granted by the Constitutions *held*, without merit (Act No. 328, § 352, Pub. Acts 1931).

Appeal from Ingham; Carr (Leland W.), J. Submitted April 14, 1938. (Docket No. 121, Calendar No. 39,912.) Decided June 8, 1938. Rehearing denied October 3, 1938.

Lester Washburn was convicted of violation of Act No. 328, § 352, Pub. Acts 1931. Affirmed.

*Seymour H. Person* (*Davidow & Davidow*, of counsel), for appellant.

*Raymond W. Starr*, Attorney General, *Thomas J. Bailey*, Prosecuting Attorney, and *Claude P. Dowis* and *Leonard B. Crandall*, Assistant Prosecuting Attorneys, for the people.

CHANDLER, J. Respondent was charged and found guilty of having violated Act No. 328, § 352, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–352, Stat. Ann. § 28.584), which provides as follows:

"Any person or persons who shall, by threats, intimidations, or otherwise, and without authority of law, interfere with, or in any way molest, or attempt to interfere with, or in any way molest or disturb, without such authority, any mechanic or other la-

borer, in the quiet and peaceable pursuit of his lawful avocation, shall be guilty of a misdemeanor.''

Respondent was sentenced to pay a fine of $100 and costs of $150, and in default of payment of fine and costs to serve 90 days in the Ingham county jail.

The return of the justice of the peace to the circuit court of Ingham county shows that, pursuant to a warrant issued on June 7, 1937, the respondent was arrested, arraigned and a plea of not guilty entered on June 9th; that a jury was impaneled at the request of defendant and trial had on July 14th, at which time defendant was found guilty; that a judgment was then rendered requiring defendant to pay costs of $100 and in default thereof that he should be imprisoned for 30 days in the county jail.

Defendant contends that the proceeding in the justice court was unlawful and contrary to 3 Comp. Laws 1929, § 17433 (Stat. Ann. § 28.1199), and that by reason thereof jurisdiction was lost and the conviction and sentence of defendant was *coram non judice.* The mentioned statute provides:

''On the return of the warrant with the accused, if he shall plead not guilty or refuse to plead to the charge in the warrant, the said justice shall proceed to hear, try and determine the cause within ten days after the return of the same, unless the absence of witnesses from the county without the fault or connivance of the party seeking such continuance shall render such continuance necessary, or unless the sickness of witnesses or of the accused shall render a continuance of such cause necessary; in which case it shall and may be competent for the justice to adjourn or continue the same for such time as may be necessary to secure the ends of justice: Provided, That in case of the absence of witnesses the party

seeking to obtain a continuance for that cause shall further show to the satisfaction of the court that he has used due diligence to obtain the testimony of such witness. Such showing shall be the same as is required in civil cases.''

The above enactment first appeared in the Revised Statutes of 1846, chap. 94, § 3 or 2 Comp. Laws 1857, § 3926, which provided that upon the return of the warrant with the accused the justice was to hear, try and determine the cause within one week. Thereafter, it was amended by Act No. 117, Pub. Acts 1867, so that continuances could be granted by reason of the absence or illness of witnesses or the sickness of the accused not exceeding 30 days in all. The statute remained in this form until the present enactment appeared in Act No. 175, chap. 14, § 8, Pub. Acts 1927 (3 Comp. Laws 1929, § 17433 [Stat. Ann. § 28.1199]) removing the 30-day limitation and extending the period of time in which the justice was to hear, try and determine the cause to 10 days.

This legislation in its various forms has been before the court on several occasions and at all times it has been interpreted liberally and the indicated causes for adjournment were not at any time considered as all inclusive. Earlier cases are summed up and the rule expressed in *People* v. *Parsons,* 163 Mich. 329:

''A strict construction of this section would require that the accused be tried within one week unless one of the grounds for continuance specified in the statute were shown, and the case could no more be continued beyond one week without the statutory showing than it could be continued beyond 30 days in all with the statutory showing. Nevertheless, this court held, in *People* v. *Shufelt,* 61 Mich. 237, that the case might be continued beyond the week upon a

showing of the sickness of the prosecuting attorney, which is not a statutory ground for continuance. In *People* v. *Hux,* 68 Mich. 477, it was held that an adjournment for more than one week, upon the application of the respondent, and with the consent of the prosecuting attorney, did not oust the justice of jurisdiction. To the same effect, see *People* v. *Weeks,* 99 Mich. 86. * * *

"The decisions cited show clearly that this court has not applied a strict construction to this statute, but has construed it to authorize adjournments, *against the objection of the accused,* where such adjournments, like those specified in the statute, were necessary to promote the interests of justice. This statute was enacted to secure to accused persons that right to a speedy trial which is guaranteed to them by the Constitution, and it would be a harsh construction which should turn this shield for their protection into a sword for their destruction. We are satisfied that a proper construction of this section permits of adjournments beyond 30 days, where such adjournments are granted upon application of the accused upon a sufficient showing, whether with or without the consent of the prosecuting attorney."

See, also, *People* v. *DeVine,* 271 Mich. 635.

But where objection was made to adjournment, the court construed the statute strictly and held that an adjournment for a reason other than stated in the statute beyond a week from the return of the warrant justified reversal. *Village of Vicksburg* v. *Briggs,* 85 Mich. 502. In the instant case, however, defendant and his counsel were present at the time trial was set for July 14th and made no objection, but at that date appeared and without questioning the jurisdiction of the court proceeded to try the case on the merits. This adjournment then was "in legal effect an adjournment at the request or at least

by the consent of the defendant, and one therefore of which he will not be heard to complain." *Paterson* v. *McRae,* 29 Mich. 258; *Beam* v. *Reynolds,* 144 Mich. 383.

It is not alleged that defendant directly interfered with the lawful avocation of the complaining witness, Edward Evans. The theory of the prosecution proceeds upon the premise that Mr. Washburn, not being present at the time Evans was prevented from working, was a principal in said offense under 3 Comp. Laws 1929, § 17253 (Stat. Ann. § 28.979), as one who "procures, counsels, aids or abets," in the commission of an offense.

The record reveals that on May 21, 1937, a strike was called at the Capitol City Wrecking Company located at 719 East St. Joseph street in the city of Lansing, Ingham county, Michigan, which company employed 45 to 60 persons. Early in the forenoon of that day, Mr. Hoffman, president and general manager of the company, upon approaching the intersection of Hosmer and St. Joseph streets, half a block east of his office building, observed approximately 150 to 200 people, and upon asking defendant why he could not go into the office and yard of the company was informed that they were on strike, and "you cannot go down the street." Mr. Hoffman left and returned shortly thereafter with some police officers. After some discussion with Captain O'Brien of the police force, defendant permitted the president and general manager of the company to enter his office building, but accompanied him to prevent any effort to phone the company's Grand Rapids office and thus fill orders through that outlet.

Prior to the time Mr. Hoffman arrived, the manager of the Lansing branch, Mr. Stewart, asked one of the men in the crowd who was in charge, and de-

fendant was pointed out as the leader. The witness asked defendant, ''What I had to do to be able to be allowed to go in the office and he told me that Mr. Hoffman knew what had to be done. And I said 'then we are not to go down there.' He said 'no.' '' The record further reveals that defendant was about the premises at frequent intervals between May 21st and June 4th, the day of the alleged offense, some witnesses saying he was there practically every day; that on June 2d he asked for volunteers for picket duty from a sound car; and that the sheriff of Ingham county gave him a copy of an injunction at his request and he listened while the sheriff read the original.

On the morning of June 4th, Edward Evans, who was an employee of the Capitol City Wrecking Company on May 21st and at the time of the alleged offense, arrived at the corner of Hosmer and St. Joseph streets, intending to go to work. He met a group of approximately 10 fellow-employees at that point, and the entire group walked down the street to the place of their employment, but as they reached the office building of the company they were stopped by about 35 to 50 men armed with various types of clubs and ''stair-spindles.'' Timber had been placed in front of the building as a line, and as the workmen approached the line, Lawrence Christian, who acted as spokesman for the armed men on that day said: ''There will be no work here to-day,'' and ''Do you want to go to work—sign on the dotted line.'' Thereupon, becoming fearful of the consequences, Evans turned around, as did the other men with him, and left the scene. Defendant arrived at the wrecking company between 8 and 8:15 in the forenoon of that day and left shortly thereafter. Defendant tes-

tified that he advised local groups and consulted the pickets of the Capitol City Wrecking Company.

The conclusion is inescapable that defendant aided and abetted in preventing Evans from engaging in his lawful avocation on June 4th, contrary to the express provisions of Act No. 328, § 352, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 17115–352, Stat. Ann. § 28.584). As said in 1 R. C. L. p. 147,

"The amount of advice or encouragement rendered is not material if it had effect in inducing the commission of the crime. Nor is the time of rendering the advice, aid or encouragement an important element."

There is no reason for disturbing the holding of the lower court in submitting this case to the jury, and their verdict was clearly in accordance with the proofs submitted.

This problem arose in *Fischer* v. *State,* 101 Wis. 23 (76 N. W. 594), where defendant was convicted under a statute declaring,

"Any person who by threats, intimidation, force or coercion of any kind shall hinder or prevent any other person from engaging in or continuing in any lawful work or employment either for himself or as a wage worker, or who shall attempt to so hinder or prevent, shall be punished." (Rev. Stat. 1898, § 4466c.)

Defendant, who was the agent of a building union which was attempting to oust nonunion men from their work, said to the complaining witnesses: "You cannot build this building. I will fight it if it takes all summer; and if your city will not protect us we will get the militia." In affirming the conviction, the appellate court said:

''This language seems to be sufficient to authorize a finding that the accused did, 'by threats, intimidation, force, or coercion,' attempt to hinder or prevent the persons named and others from engaging or continuing in the lawful work or employment mentioned.''

Our statute makes no distinction between the representative of the labor union and an individual. The right of labor to strike is of course not affected by the statute under consideration, yet its terms, providing that any person or persons who shall without authority of law interfere with any mechanic or other laborer in the pursuit of his lawful avocation is sufficiently broad to prevent individual interference with the right to work as well as organized effort.  The statute is a lawful enactment of the legislature and a proper exercise of the police power of the State.

Defendant contends that the statute in question is ''unenforceable because of indefiniteness and because it violates the State and Federal Constitutions as to class legislation and as to civil rights granted by said Constitutions.''  The claim is without merit. The act is violative of no constitutional provision, State or Federal.

The conviction is affirmed.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, NORTH, and MCALLISTER, JJ., concurred.  POTTER, J., did not sit.