PEOPLE v CORTEZ

PEOPLE v GONZALES

PEOPLE v CESPEDES

Docket Nos. 64662, 65021. Submitted July 21, 1983, at Detroit.—
Decided January 3, 1984. Leave to appeal applied for.

Herman Cortez, Fernando H. Gonzales, and Merquiades N. Ces-
pedes were charged with possession of more than 650 grams of
a mixture containing cocaine. Cortez and Gonzales were con-
victed of the charged crime following a jury trial in Recorder's
Court of Detroit, Michael J. Talbot, J. Cespedes was found
guilty as charged following a bench trial before Judge Talbot.
Cortez and Gonzales appealed. Cespedes appealed. The appeals
were consolidated for review. *Held:*

1. The trial court properly held that the prosecution could
impeach Gonzales with evidence of his prior conviction of
delivery of cocaine. While evidence of a prior conviction for the
same crime as that being charged is prejudicial, the prejudicial
effect of the evidence of the prior conviction was outweighed by
the probative value on the question of impeachment, since
Gonzales, a Columbian national, had claimed that he had

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence §§ 251, 320, 321, 327.
  81 Am Jur 2d, Witnesses § 525.
[3-5] 21A Am Jur 2d, Criminal Law §§ 717, 718, 774, 1010.
  41 Am Jur 2d, Indictments and Informations § 60.
[6] 76 Am Jur 2d, Trial § 1239.
[7] 46 Am Jur 2d, Judges §§ 167, 170, 199.
[8, 9] 68 Am Jur 2d, Searches and Seizures § 63 *et seq.*
[9] 3 Am Jur 2d, Affidavits § 29.
[10] 30 Am Jur 2d, Evidence §§ 1170-1172.
[11, 12, 14] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 27.13, 47.
[13, 16] 21 Am Jur 2d, Criminal Law § 167.
[14] 21 Am Jur 2d, Criminal Law §§ 539, 629.
  Review for excessiveness of sentence in narcotics case. 55 ALR3d
  812.
[15] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 27.5, 27.6.
[16] 21 Am Jur 2d, Criminal Law § 625 *et seq.*

illegally entered this country to secure a commission to paint a portrait and his presence at the place the cocaine was found was purely conincidental. The trial court did not abuse its discretion in finding that the probative value of the evidence of the prior conviction for the purpose of impeachment out-weighed its prejudicial effect.

2. Since the prosecution was not required to call at trial the accomplices who had been indorsed on the information and since the decision to call or not call the accomplices may be made on the basis of developments during trial, reversal is not mandated by the failure of the prosecution to respond to the inquiry made at the beginning of the trial as to whether the accomplices would be called.

3. The trial court in Cespedes's bench trial properly reviewed the court file to ascertain the nature of a ruling made in the pretrial proceedings in order to resolve a legal question raised by Cespedes in the trial court. The mere fact that a trial court is sitting as a trier of fact does not preclude the court's review of nonevidentiary matters contained in the court file.

4. The record fails to substantiate any claim of actual bias on the part of the trial court.

5. The affidavit used to secure the search warrant is legally sufficient under the prevailing standard adopted by the United States Supreme Court.

6. The affidavit prepared to obtain a search warrant does not fall within the scope of MRE 803(6) and was thus not admissible at trial.

7. Proof of the defendant's knowledge as to the amount of a controlled substance is not required to sustain a conviction for possession with intent to deliver more than 650 grams of a mixture containing cocaine.

8. Since there was sufficient evidence to link Cespedes with both the cocaine mixture found with him and the cocaine mixture found nearby, the aggregate weight of the two amounts was properly used to establish the statutory quantity.

9. The evidence supported the charging of the jury in the trial of Cortez and Gonzales on the theory of aiding and abetting.

10. The mandatory life sentence received by each defendant does not violate the constitutional prohibition against cruel and unusual punishment. The classification of cocaine as a narcotic drug for the purpose of sentencing is not constitutionally prohibited. It is not cruel and unusual punishment to treat

aiders and abettors the same as principals for sentencing purposes.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACH-MENT.

A trial court, in determining whether to permit impeachment of a criminal defendant by evidence of the defendant's prior felony conviction, must consider the nature of the prior offense, whether the prior offense is for the same conduct for which defendant is on trial, and the effect on the decisional process if the defendant does not testify because of the use of the impeachment evidence; the trial court is required to determine whether the probative value of the impeachment evidence outweighs its prejudicial effect and must articulate on the record the factors considered in making its determination (MRE 609[a][2]).

2. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACH-MENT.

It is not an abuse of discretion for a trial court to permit impeachment of a criminal defendant with evidence of a prior conviction for delivery of cocaine in a trial on another charge of possession with intent to deliver cocaine where the defendant, a citizen of Columbia, had claimed that he had entered this country illegally to attempt to secure a commission to paint a portrait and that his presence at the place the cocaine was found was purely coincidental, since, under those circumstances, the probative value of the evidence of the prior delivery of cocaine conviction outweighed the prejudicial effect of permitting impeachment by evidence of a prior conviction for the same type of crime for which the defendant was on trial.

3. CRIMINAL LAW — WITNESSES — INFORMATIONS — INDORSEMENT OF WITNESSES.

The Michigan rule requiring the prosecution to indorse all res gestae witnesses on the information is virtually unique and has been criticized as being unnecessary to assure defendants fair trials and as being unfair to the prosecution; the rule serves no useful purpose, because defendants may obtain the testimony of favorable witnesses through compulsory process without the assistance of the prosecution (MCL 767.40; MSA 28.980).

4. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW — ACCOM-PLICES — INDORSEMENT OF WITNESSES.

The statutory duty of the prosecution to indorse and call all res

gestae witnesses does not extend to accomplices; accomplices, for the purpose of the indorsement of res gestae witnesses rule, are not limited to only those persons who have been charged as accomplices but rather includes all those persons who could have been charged as accomplices (MCL 767.40; MSA 28.980).

5. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW — ACCOMPLICES.

Indorsement of an accomplice on the information does not obligate the prosecution to call the accomplice as a witness at trial; accordingly, it is not error for the prosecution to fail to respond to an inquiry at the beginning of a trial as to whether an accomplice who was indorsed would be called as a witness, since the prosecution would be free to determine, on the basis of developments during the trial, whether to call the accomplice as a witness.

6. CRIMINAL LAW — BENCH TRIAL — MOTIONS — COURT FILE.

A trial judge sitting without a jury in a criminal case may properly examine the pleadings, motions, opinions, and similar documents contained in the court file, providing that the judge carefully refrains from examining anything of an evidentiary nature contained in the court file.

7. JUDGES — DISQUALIFICATION — PREJUDICE — BIAS.

A trial court's remarks concerning the credibility of a criminal defendant made as a part of the court's determination of whether to admit evidence of the defendant's prior conviction for impeachment purposes does not establish prejudice and bias by the trial court against the defendant such that the court should disqualify itself from presiding over the defendant's trial.

8. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — JUDICIAL REVIEW.

A magistrate, in determining whether to issue a search warrant, shall make a practical, common-sense decision of whether, given all the circumstances set forth in the affidavit accompanying the request for the warrant, including the veracity and basis for knowledge of persons supplying hearsay information, there is a fair probability that the evidence being sought will be found at the designated place; the duty of a reviewing court is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.

9. Evidence — Search Warrants — Affidavits.

   An affidavit prepared to secure a search warrant is not admissible at the subsequent criminal trial (MRE 803[6]).

10. Criminal Law — Evidence — Sufficiency of Evidence.

   Evidence is sufficient to sustain a criminal conviction if, viewed in the light most favorable to the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt.

11. Controlled Substances — Amount of Controlled Substance — Evidence — Criminal Law.

   A criminal defendant's knowledge of the amount of a prohibited controlled substance in his possession is not an element of the crime of possession of a controlled substance with intent to deliver.

12. Controlled Substances — Amount of Controlled Substance — Evidence — Sufficiency of Evidence.

   There is sufficient evidence to convict a person of possession of more than 650 grams of a mixture containing cocaine where the defendant is in actual possession of a quantity of less than 650 grams of such a mixture, the evidence establishes a basis upon which the defendant could be found to be constructively in possession of a separate quantity of less than 650 grams of such a mixture located nearby, and the aggregate total weight of the two quantities of the mixture totalled more than 650 grams (MCL 333.7401[2][a][i]; MSA 14.15[7401][2][a][i]).

13. Criminal Law — Aiding and Abetting — Principals — Accessory.

   The phrase "aiding and abetting" in criminal law is used to describe all forms of assistance rendered to the perpetrator of a crime; the term comprehends all words or deeds which may support, encourage, or incite the commission of a crime; it includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary; the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime.

14. Controlled Substances — Sentencing — Cruel and Unusual Punishment — Criminal Law — Constitutional Law.

   The statutory provision in the Public Health Code providing for a mandatory life sentence for possession with intent to deliver 650 or more grams of a controlled substance is not cruel and unusual punishment within the meaning of the United States

and Michigan Constitutions (US Const, Am VIII; Const 1963, art 1, § 16; MCL 333.7401[2][a][i]; MSA 14.15[7401][2][a][i]).

15. CONTROLLED SUBSTANCES — COCAINE — NARCOTIC DRUGS — DELIVERY — CONSTITUTIONAL LAW.

The controlled substances provisions of the Public Health Code which classify cocaine as the equivalent of a narcotic drug for purposes of imposing penalties for its delivery are constitutional (MCL 333.7401[2][a][i]; MSA 14.15[7401][2][a][i]).

16. CRIMINAL LAW — AIDERS AND ABETTORS — SENTENCING — CRUEL AND UNUSUAL PUNISHMENT — CONSTITUTIONAL LAW.

It is not cruel and unusual punishment within the meaning of the United States and Michigan Constitutions to treat aiders and abettors the same as principals for sentencing purposes (US Const, Am VIII; Const 1963, art 1, § 16; MCL 767.39; MSA 28.979).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *William L. Cahalan*, Prosecuting Attorney, *Edward Reilly Wilson*, Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon* and *Jeffrey Caminsky*, Assistant Prosecuting Attorneys, for the people.

*Bell & Hudson, P.C.* (by *Edward F. Bell*), for Herman Cortez and Fernando H. Gonzales.

*John C. Mouradian*, for Merquiades N. Cespedes.

Before: J. H. GILLIS, P.J., and GRIBBS and H. R. GAGE,* JJ.

H. R. GAGE, J. After a joint jury trial, defendants Cortez and Gonzales were convicted of possession of more than 650 grams of a mixture containing cocaine with intent to deliver, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i). Defendant Cespedes was convicted of the same crime in a separate nonjury trial. Defendants were sen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tenced to imprisonment for life, and they appeal as of right.

I

Defendant Gonzales argues that the trial court erred by ruling that evidence of his prior conviction of delivery of cocaine could be used to impeach him if he testified. In making such a ruling, a court must consider the nature of the prior offense, whether it is for substantially the same conduct for which the defendant is on trial, and the effect on the decisional process if defendant does not testify from fear of impeachment. See *People v Jackson,* 391 Mich 323, 333; 217 NW2d 22 (1974), citing *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967). MRE 609(a)(2) requires the trial court to determine whether the probative value of the evidence of the prior conviction outweighs the prejudicial effect and to articulate on the record the factors considered in making its determination. An appellate court reviews such a ruling by determining whether the trial court committed an abuse of discretion. *People v Worden,* 91 Mich App 666, 676; 284 NW2d 159 (1979).

Here, the trial court recognized the prejudicial effect of the similarity of the prior offense to the offense for which defendant was on trial. The trial court was informed that defendant Gonzales might not testify if the court decided to permit use of the prior conviction, and the court expressly considered the adverse effect on the decisional process that would result. However, the court had heard the testimony of defendant Gonzales at a previous trial which ended in a mistrial. The defendant, a citizen of Columbia, claimed that he entered this country illegally at short notice in order to at-

tempt to secure a commission to paint a portrait and that his presence at the place where the cocaine was found was purely coincidental. In concluding that under these circumstances the probative value of the evidence of the prior conviction outweighed its prejudicial effect, the court pointed to *People v Jones,* 98 Mich App 421, 428-429; 296 NW2d 268 (1980), in which the Court said:

"*People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979), held that the similarity of a prior conviction to the offense charged increases its prejudicial effect and is a factor to be weighed against its use for impeachment. But frequently the probative value of a conviction, or series of convictions, is increased, proportionally or greater, on the issue of credibility because of that similarity. The principles underlying MRE 404(b) may bear upon the credibility issue, depending in part on the nature of the defense defendant's testimony presents, even if the similarities are not great enough so that the evidence would qualify under that rule.

"When a victim says 'He did it!' and the defendant says 'I didn't,' or 'I was so drunk I didn't mean to,' or even 'I was ten miles away at the time,' it is relevant to the central issue of who is telling the truth that the defendant has been guilty of similar criminal conduct before, perhaps repeatedly. Both the prejudicial effect and the probative value on the issue of credibility are because of the true fact of life, based on human experience and fundamental to human insight, that it is more probable that a person has committed a crime if he has done it before, maybe several times. A jury should not be deprived of that information simply because the crimes are similar or because the criminal record is extensive. When it comes to whom to believe, it should not benefit the defendant that he is a repeater, perhaps specializing in this kind of crime, or that his record is so bad that it will weigh heavily against him. After all, he committed the previous crimes and they tell a great deal about him and about whether he is lying now."

We agree with the reasoning of the *Jones* opinion, and on this record we cannot say that the trial court committed an abuse of discretion.

## II

Defendants complain of the prosecution's failure to produce two alleged res gestae witnesses, Phyllis Lambros and Marlena Eric, at either trial. In 7 Wigmore, Evidence (Chadbourne Rev), §§ 2079, 2080, pp 536-543, it is pointed out that Michigan's rule requiring the prosecution to endorse and call all res gestae witnesses is virtually unique, and the rule is criticized as unnecessary to assure defendants fair trials and as unfair to prosecutors. We believe that the rule serves no useful purpose, because defendants may obtain the testimony of favorable witnesses through compulsory process without the assistance of the prosecution. See US Const, Am VI; Const 1963, art 1, § 20; MCL 767.32; MSA 28.972, and MCL 767.33; MSA 28.973. We therefore urge abolition of the rule.

The prosecutor's duty to call res gestae witnesses does not extend to accomplices. *People v McCullough,* 81 Mich 25; 45 NW 515 (1890); *People v Resh,* 107 Mich 251; 65 NW 99 (1895); *People v Knoll,* 258 Mich 89; 242 NW 222 (1932); *People v White,* 401 Mich 482; 257 NW2d 912 (1977); *People v Belenor,* 408 Mich 244; 289 NW2d 719 (1980). A potential witness need not be actually charged with the crime in order to fall within the accomplice exception. *People v Threlkeld,* 47 Mich App 691, 695; 209 NW2d 852 (1973). A potential witness falls within the accomplice exception if he or she could have been charged with the same crime as the defendant. *Threlkeld, supra,* p 696; *People v John Moore,* 78 Mich App 150, 154; 259 NW2d 403 (1977). See also *People v Belenor, supra,* p 246, in

which the Court held that a witness fell within the accomplice exception because the witness was "thought" and "perceived" by the prosecutor to be an accomplice.

In *People v Raider,* 256 Mich 131, 135-136; 239 NW 387 (1931), the Court explained the purpose behind the accomplice exception and similar exceptions:

> "Obviously the exceptions were founded upon the recognized inclination or inducement of those close to the accused, by community of interest in the crime or relationship, to perjure themselves, if they deem it necessary, in his behalf, and the incongruity of requiring the prosecution to make such witnesses its own."

At each trial, the court ruled that Lambros and Eric were accomplices. Defendant Cespedes claimed that there was no evidence before the court at his trial to support this ruling. However, after the court ruled, Cespedes himself testified that Lambros and Eric brought the cocaine at issue onto the premises concealed under their skirts. Because this testimony conclusively established that Lambros and Eric could have been charged with the same offense as Cespedes, any deficiency in the evidence before the court at the time of its ruling was harmless beyond a reasonable doubt.

Defendants Cortez and Gonzales argue that, because they had no opportunity to cross-examine Cespedes at his previous trial, and because the testimony of Cespedes fell within no exception to the hearsay rule, the court should not have relied on that testimony to conclude that Lambros and Eric were accomplices for the purpose of the trial of Cortez and Gonzales. However, this argument is based on a fundamental misconception concerning

the accomplice exception. The prosecution was not required to prove that Lambros and Eric were guilty in order to invoke the exception; rather, the prosecution was merely required to show that Lambros and Eric could have been charged or were thought or perceived to be accomplices. In his testimony, Cespedes asserted that Lambros and Eric were guilty, but at the subsequent trial of Cortez and Gonzales the testimony was used merely to show that Lambros and Eric had been accused and that testimony to support that accusation could be produced. The testimony was not hearsay when used for such purpose; see MRE 801(c). Because the testimony was not offered to prove the truth of the matter asserted, we fail to see how the absence of an opportunity to cross-examine Cespedes concerning the truth of the matter asserted was relevant. The accusations of Cespedes created the "community of interest" discussed in *Raider* between Lambros, Eric, Cortez, and Gonzales.

Defendant Cespedes also complains of the prosecutor's delay in disclosing that Lambros and Eric would not be produced. The names of Lambros and Eric were originally endorsed on the information. At the beginning of trial, counsel for defendant Cespedes demanded to know whether the prosecutor would be able to produce all endorsed witnesses; the prosecutor declined to respond. At the close of his proofs, the prosecutor informed the court that he could not produce Lambros and Eric, and the court concluded that Lambros and Eric were accomplices that the prosecution need not produce. In *People v Lytal,* 415 Mich 603, 611; 329 NW2d 738 (1982), the Court explained:

"It is argued that if the prosecutor is required to

indorse the name of an accomplice he would then be obliged to produce him at the trial and call him as a witness. In holding that the prosecutor is required to indorse the name of an accomplice that he intends to call, we do not oblige the prosecutor to produce at the trial or to call the accomplice as a witness. The prosecutor may have greater difficulty in producing an accomplice than other witnesses and, as he approaches the time of trial or, indeed, *as the result of developments during trial,* he should be able to change his mind about calling the accomplice as a witness if it appears to him that the accomplice should not be called." (Emphasis added.)

*Lytal* shows that defendant Cespedes's argument is without merit. We note, moreover, that the failure of Cespedes's counsel to move for a continuance in order to attempt to obtain the presence of the witnesses refutes any claim of surprise or prejudice.

## III

Defendants argue that the trial judge was biased and should have disqualified himself. Defendant Cespedes points to the statement by the judge which indicated that the judge examined the court file. In *People v Ramsey,* 385 Mich 221, 225-226; 187 NW2d 887 (1971), the Court held:

"[A]s an absolute rule it is reversible error for the trial court sitting without a jury to refer to the transcript of testimony taken at the preliminary examination except under the exceptions provided by statute. A jury, if impanelled, would not be aware of the testimony taken at a preliminary examination except under the provisions of the statute. A trial judge, sitting as the trier of the facts, can assume no greater prerogatives than a jury if a jury were impanelled to determine the facts."

What occurred at the trial of Cespedes is not at all comparable to what occurred in *Ramsey*. It was necessary for the judge to determine what another judge had ruled in the course of pretrial proceedings in order to resolve a legal question raised by Cespedes. The judge noted that he had carefully refrained from examining anything of an evidentiary nature in the file. Examination of pleadings, motions, opinions, and similiar documents by a trial judge sitting without a jury is not improper; a contrary rule would render it impossible for a judge to control the trial while sitting as the trier of fact.

Defendants Cortez and Gonzales claim that actual bias was shown by remarks made by the trial judge in the course of resolving the motion by defendant Gonzales to prevent use of evidence of his prior conviction for impeachment purposes. However, a claim of bias can never be based solely upon a decision in the due course of judicial proceedings. *Kolowich v Ferguson*, 264 Mich 668; 250 NW 875 (1933). The remarks of which defendants complain concern the credibility of defendant Gonzales as a witness and were made by the trial judge in the course of carrying out his duty pursuant to MRE 609(a)(2) to articulate on the record his reasons for determining that the probative value of the evidence of the prior conviction outweighed its prejudicial effect. *Kolowich* shows that such remarks do not demonstrate judicial bias.

## IV

In the course of a search authorized pursuant to a warrant, defendants were arrested and virtually all of the evidence against them was seized. Defendants attack the sufficiency of the affidavit which induced the magistrate to issue the warrant. In

*Illinois v Gates,* — US —; 103 S Ct 2317; 76 L Ed 2d 527, 548 (1983), the Court stated a new test of the sufficiency of an affidavit containing hearsay:

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. *Jones v United States,* [362 US 257, 271; 80 S Ct 725; 4 L Ed 2d 697 (1960)]."

The Court overruled the test previously stated in *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

The affidavit at issue here was executed by a member of the Oakland County Sheriff's Department working with the state police narcotics enforcement team. According to the affidavit, the team had a person named James Leadbetter under surveillance. They observed Leadbetter enter the premises empty-handed and exit from the premises carrying something in his hand. An undercover officer then purchased from Leadbetter three ounces of a substance which a field test indicated was cocaine. Leadbetter was arrested and informed the affiant that he purchased the cocaine on the premises from a person named "Charlie" and that another person, "Raffel", was in possession of a large amount of cocaine on the premises in clear plastic bags. The members of the team had Leadbetter telephone a certain number and talk to "Charlie" under a controlled situation. Leadbetter was informed by "Charlie" that he could obtain a

quarter pound of cocaine by coming to the premises.

Considering all the circumstances, particularly the corroboration of Leadbetter's story by surveillance and the telephone call under a controlled situation, we cannot say that the magistrate did not have a substantial basis for concluding that probable cause existed.

Defendants Cortez and Gonzales also argued that the trial court erred by declining to permit them to introduce the affidavit in evidence at trial. Defendants sought to have the affidavit introduced pursuant to MRE 803(6), which states an exception to the hearsay rule for records of regularly conducted activity. Defendants point to testimony that execution of affidavits to obtain search warrants is part of the regular activity of a police officer. However, MRE 803(6) contains an important qualification: records of regularly conducted activity are not admissible if the method or circumstances of preparation indicate lack of trustworthiness. As a general rule, documents prepared for use in litigation are excluded by this qualification. Otherwise, businesses or organizations regularly involved in litigation could avoid cross-examination of their witnesses by regularly recording all favorable extrajudicial statements. See *Palmer v Hoffman,* 318 US 109; 63 S Ct 477; 87 L Ed 2d 645 (1943). Because the affidavit at issue was prepared to obtain a search warrant, MRE 803(6) did not render it admissible at the subsequent trial.

V

Defendants make several arguments relating to the sufficiency of the evidence to sustain their convictions. Evidence is sufficient to sustain a conviction if, viewed in the light most favorable to

the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Defendant Cespedes points out that there was no evidence from which it could be inferred that he knew that the mixture containing cocaine which he possessed weighed more than 650 grams. However, defendant does not cite, and we cannot find, any authority suggesting that knowledge of the weight of the mixture is an essential element of the crime. In *People v Delgado,* 404 Mich 76, 86-87; 273 NW2d 395 (1978), the Court held that knowledge of the character of the substance possessed was not an essential element of a controlled substance offense, although the Court recognized that in some cases defendants could successfully claim that their lack of knowledge of the character of the substance showed the absence of any criminal intent. Although *Delgado* was decided under a previous statute, its reasoning is equally applicable to the current statute. If knowledge of the character of the substance is not an essential element of the crime, we cannot see how knowledge of the amount could be. Moreover, because possession of any amount of a controlled substance is a crime, we cannot see how lack of knowledge of the amount could show the absence of any criminal intent.

Defendant Cespedes also points out that the evidence at his trial showed two distinct quantities of cocaine, each weighing less than 650 grams. Cespedes was found hiding in a closet with a bag containing slightly more than 550 grams on his person. In the room outside the closet, a similar amount of cocaine was found in several plates on a

table, together with a set of scales and a quantity of a substance commonly used to dilute cocaine. Defendant Cespedes's coat was found on a chair next to the table.

Defendant Cespedes contends that these two distinct quantities could not be combined to support a single conviction for possession of an amount greater than either individual quantity. In support of his contention, defendant points to *United States v Privett,* 443 F2d 528, 531 (CA 9, 1971); however, in that case the Court merely held that the constitutional prohibition of double jeopardy did not preclude multiple convictions where each conviction was supported by different evidence concerning the purity of the substance, its location, and acts by defendant. The reasoning employed in *Privett* would permit rather than require multiple convictions.

If we were to accept defendant Cespedes's contention, drug dealers could protect themselves against exposure to serious criminal charges by simply dividing their drugs into a large number of small packages. Nothing in the statute suggests that the Legislature intended such an absurd result. Compare *People v Porterfield,* 128 Mich App 35; 339 NW2d 683 (1983), in which the Court held that the defendant was properly convicted of a single conspiracy to deliver more than 50 grams of heroin rather than several conspiracies to deliver less than 50 grams, although the various quantities aggregated in *Porterfield* were more distinct in time and space than the two quantities aggregated here.

Defendants Cortez and Gonzales argue that the evidence was insufficient to support an inference that they possessed more than 650 grams of a mixture containing cocaine. The theory presented

by these defendants was that they were present on the premises merely to purchase a relatively small quantity for personal use and that the large quantities found on the premises were actually possessed by other persons, the dealer and his associates. In support of this theory, defendants Cortez and Gonzales point to evidence that the premises on which the cocaine was found were owned and rented by others and that they arrived from New York only hours before their arrest. However, in the trial of Cortez and Gonzales, as at the trial of Cespedes, evidence showed that a large quantity of cocaine was found in plates on a table, together with a set of scales and a quantity of a substance commonly used to dilute cocaine. Fingerprints belonging to Cortez and Gonzales were found on bottles and plates found on the table. Testimony of another person found on the premises, Pedro Gekas, showed that Cortez and Gonzales entered the room containing the table at least twice.

This case was presented to the jury on an aiding and abetting theory. In *People v Palmer,* 392 Mich 370, 378; 220 NW2d 393 (1974), the Court explained:

"In criminal law the phrase 'aiding and abetting' is used to describe all forms of assistance rendered to the perpetrator of a crime. This term comprehends all words or deeds which may support, encourage or incite the commission of a crime. It includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary. 22 CJS, Criminal Law, § 88(2), p 261. The amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime. *People v Washburn,* 285 Mich 119, 126; 280 NW 132 (1938)."

The evidence previously discussed supports an

inference that defendants Cortez and Gonzales at least assisted in the preparation of the cocaine for sale. A rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could therefore conclude that the essential elements of aiding and abetting the crime were proven beyond a reasonable doubt.

## VI

Defendants argue that their sentences of life imprisonment constituted "cruel and unusual punishment" in violation of US Const, Am VIII or "cruel and unusual punishment" in violation of Const 1963, art 1, § 16. We reject this argument for the reasons stated in *People v McCarty,* 113 Mich App 464; 317 NW2d 659 (1982). Defendants Cortez and Gonzales contend that a sentencing scheme which places possession of cocaine in the same category as possession of other drugs such as heroin is irrational, but we reject this contention for the reasons stated in *People v Kaigler,* 116 Mich App 567; 323 NW2d 486 (1982), and *People v Kirchoff,* 120 Mich App 617; 327 NW2d 535 (1982).

Defendant Cespedes argues that it is cruel and unusual to treat aiders and abettors the same as principals for sentencing purposes. It is not clear that Cespedes was convicted as an aider and abettor, but we will assume without deciding that he has standing to raise such an argument. In the course of the last century, the common-law distinction between aiders and abettors and principals has been abolished in England and in nearly every jurisdiction in this country by statutes providing that aiders and abettors may be tried and punished as principals. See LaFave & Scott, Criminal Law, § 63, pp 500-501, and the authorities dis-

cussed in *Standefer v United States,* 447 US 10, 16-18; 100 S Ct 1999; 64 L Ed 2d 689 (1980). In Michigan, such a statute was enacted by 1855 PA 77; see MCL 767.39; MSA 28.979, for the current provision. In view of this consensus, we cannot say that punishment of an aider and abettor as a principal constitues cruel and unusual punishment.

Affirmed.