Henry Lee DILLARD, # 245428,
Petitioner,

v.

John PRELESNIK, Respondent.

No. CIV.A.00–71114–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 18, 2001.

**800**

Henry Dillard, Handlon Michigan Training Unit, Ionia, MI, pro se.

Debra M. Gagliardi, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for John Prelesnik, respondents.

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

ROSEN, District Judge.

### I. Introduction

Petitioner, Henry Lee Dillard ("Petitioner"), presently confined at the Handlon Michigan Training Unit in Ionia, Michigan, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, Petitioner attacks his conviction of second degree murder, M.C.L. 750.317 and possession of a firearm during the commission of a felony, M.C.L. 750.227b. Petitioner was sentenced to consecutive prison terms of twenty-five to forty years and two years for these crimes. Petitioner contends that his conviction for second degree murder is supported by constitutionally insufficient evidence.

### II. Factual Background

Petitioner's convictions arise from the murder of Donald Wright on July 19, 1994. Wright was shot to death in his parked car at about 11:00 p.m. Wright was sleeping in his car outside Timbertown Automotive, an auto repair shop where he worked. Wright planned to stay there until his workday began the next morning.

Petitioner, his co-defendant Toby Roger Davis, and two other men, Edward Christopher and Edwin Ellis Rodgers, were riding around in Petitioner's car that night. Christopher and Rodgers witnessed the shooting and heard Davis and Petitioner talk about it afterwards. Christopher and Rodgers were not prosecuted. Both testified for the prosecution.

The evidence indicated that Petitioner's co-defendant, Toby Roger Davis, approached the victim's car on the driver's side and fired the first shot at the victim. Edward Christopher testified that, after Davis had fired the first shot, Petitioner jumped out of his vehicle and then joined Davis at the driver's side window of the victim's car.[1] Christopher heard another

---

1. Christopher also testified that he was charged with assault with intent to rob while armed, assault with intent to commit murder, conspiring to commit armed robbery, and conspiring to commit murder. All four of these charges carry possible life sentences in

shot while both Davis and Petitioner were at the driver's window. Christopher could not tell who fired the second shot. Christopher saw Petitioner reach into the victim's car through a window and carry something away. Petitioner had some money in his hands when he returned to his car after the shooting. Upon returning to their car, Davis and Petitioner both claimed to have shot the victim in the head. Trial Transcript Volume III ("Tr. Vol.III") at 85–92.

Donald Wright was killed by a gunshot to the head. Wright was apparently shot while sleeping in his car near his place of employment. The fatal bullet entered his head on the left side of his head above his ear, passed through his brain, and exited out of his right forehead. Wright also had a wound on the little finger of his right hand. This wound may or may not have been caused by the bullet which killed Wright. A nine millimeter bullet and a .22 caliber bullet were found in the victim's car. The bullet's entry wound in Wright's head was about ten millimeters in diameter. A .22 caliber bullet generally does not make an entry wound that large.

There was an exit wound from which the bullet left the victim's head through his right forehead. A nine millimeter handgun round is much more powerful than a .22 caliber round. Generally, .22 caliber bullet fired into a person's skull will stay inside the skull after passing through the brain. However, a 9 millimeter bullet has substantially more force. When fired into a human skull, it often exits through the opposite side of the skull after passing through the brain. Tr. Vol. III at 149–54.

Based on these facts, forensic pathologist Dr. Kanu Virani opined that the 9 mm bullet caused Donald Wright's death. Tr. Vol. III at 164. Dr. Virani also noted,

however, that it was very unlikely but not impossible, that the victim had been killed by the .22 caliber bullet.

Edwin Rodgers testified that, after Davis fired the first shot, Petitioner approached the victim's vehicle on the passenger side and fired a shot. The second shot was fired only a few seconds after the first shot. Rodgers thought Petitioner was carrying a gun which was smaller than the gun Davis carried. Rodgers testified that he heard Petitioner and Davis argue about who had shot the victim in the head. Tr. Vol. IV at 15–67.

Kent Gardner, an expert on firearms identification, testified that 9mm guns are generally larger than .22 caliber guns, but that both of these calibers are available in guns various sizes.

Petitioner did not testify at trial. Petitioner contends that the evidence shows that his co-defendant Toby Davis fired the shot which killed Donald Wright. Further, Petitioner argues, there was insufficient evidence to show that he aided and abetted Davis in the killing.

## III. Procedural History

Petitioner appealed as of right to the Michigan Court of Appeals. Petitioner raised the following claims:

I. Defendant–Appellant's conviction for murder in the second degree was obtained without sufficient evidence to prove guilt beyond a reasonable doubt.

II. Failure to grant separate trials for the Defendant–Appellant and his co-defendant resulted in prejudicial error.

III. The sentence imposed was not proportionate to the crime.

IV. The sentence imposed by the trial court was so disparate that it amounts to

Michigan. Tr. Vol. III at 102–03. Christopher received complete immunity from all

charges before testifying at Petitioner's trial. Tr. Vol. III at 76–77.

cruel and unusual punishment and thereby violates the United States and Michigan Constitutions.

Petitioner's appeal was consolidated with the appeal of his co-defendant. *People v. Toby Roger Davis and Henry Lee Dillard*, Michigan Court of Appeals Docket Nos. 189228 and 189232 (October 23, 1995). The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. The Michigan Court of Appeals rejected Petitioner's insufficiency of the evidence claim, reasoning as follows:

> In order to be convicted of second-degree murder, the following elements must be established beyond a reasonable doubt: that defendant caused a death with malice and without justification or excuse. *People v. Neal*, 201 Mich.App. 650, 654, 506 N.W.2d 618 (1993). Defendant takes issue only with whether there was sufficient evidence from which a jury could have concluded that the cause the death of the victim. While much evidence pointed at Davis as being the shooter who delivered the fatal bullet, there was evidence pointing directly at Dillard, including that Dillard fired a second shot into the victim's car and claimed that he fired the fatal bullet. Dillard also bragged to a witness that he was the shooter at the second crime scene. The bullets from the that crime scene matched the nine-millimeter bullet suspected to have caused Wright's death. The jury could have believed that Dillard, and not Davis, had the nine-millimeter gun responsible for the death. Moreover, there was testimony that it was not impossible that the .22–caliber bullet caused the death. Therefore, even if Dillard had the .22–caliber gun and not the nine-millimeter gun, the jury could have believed that he fired the fatal shot, especially where the jury could have inferred from other evidence that Davis' shot, the first shot, may have

just hit Wright in the hand and not the head. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have determinated that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 515, 489 N.W.2d 748 (1992).

> More importantly, we note that Dillard could have been found guilty on an aiding and abetting theory as opposed to being found guilty as the principal. There was ample evidence to support his conviction as an aider and abettor. Dillard ignores this aspect of the case in its entirety when making his arguments on appeal.

*People v. Davis and Dillard*, Nos. 189228 and 189932 at 5–6.

Petitioner's application for leave to appeal in the Michigan Supreme Court raising the same issues was denied, with Justices Cavanagh and Kelly indicating that they would grant leave to appeal. *People v. Dillard*, 459 Mich. 945, 590 N.W.2d 66 (1999).

Petitioner has filed the present application for a writ of habeas corpus raising the following claim as grounds for relief:

I. PETITIONER'S CONVICTION OF SECOND DEGREE MURDER IS NOT SUPPORTED BY CONSTITUTIONALLY SUFFICIENT EVIDENCE.

Respondent has filed an Answer to the petition and contends that it should be denied because the Michigan appellate courts' denial of Petitioner's sufficiency of the evidence claim was a reasonable application of applicable federal constitutional precedent.

IV. **Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996,

Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996)("AEDPA" or "the Act"), govern this case because petitioner filed his habeas corpus petition after the effective date of the Act. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

As amended, 28 U.S.C. § 2254(d) provides that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The United States Supreme Court has recently addressed the question of the proper interpretation of the amendments to the habeas corpus statute concerning entitlement to relief. The Supreme Court has stated that "[i]n sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). The Supreme Court summarized the standard of review as follows:

In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* 529 U.S. at 412–13, 120 S.Ct. at 1523.

"[A] federal habeas court making the 'unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.' " *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. The reviewing court should not inquire whether all reasonable jurists would agree that the state court's decision was reasonable or unreasonable. The reviewing court must be aware that "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams,* 529 U.S. at 410, 120 S.Ct. at 1522.

■ Where constitutional trial error has been shown and the reviewing court concludes that the error had a substantial and injurious effect or influence in determining the jury's verdict, a state court ruling find-

ing such error harmless beyond a reasonable doubt is outside the realm of plausible, credible outcomes and the petitioner is entitled to habeas relief. *Barker v. Yukins*, 199 F.3d 867 (6th Cir.1999), *cert. denied*, 530 U.S. 1229, 120 S.Ct. 2658, 147 L.Ed.2d 273 (2000). "[A] state court's application of federal law is unreasonable and a writ may issue only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible, credible outcomes." *Barker*, 199 F.3d at 871. "When a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neal v. McAninch*, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

 A federal court reviewing a habeas petition must apply the presumption of correctness to evidence-supported factual determinations made by a state court. *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996); *cert. den.* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996); *Lundy v. Campbell*, 888 F.2d 467, 469 (6th Cir.1989), *cert. denied*, 495 U.S. 950, 110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). This presumption may only be overcome by the presentation of clear and convincing evidence by the petitioner. 28 U.S.C. § 2254(e)(1). In a post-AEDPA case involving a challenge to the sufficiency of the evidence, the Sixth Circuit Court of Appeals has stated that "[p]ursuant to subsection (1), a writ of habeas corpus may be granted if the court concludes that 'no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Warren v. Smith*, 161 F.3d 358, 360 (6th Cir.1998), *cert. denied*, 527 U.S. 1040, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

## V. Discussion

### Sufficiency of the Evidence Claim

██ Petitioner contends that his conviction is not supported by constitutionally sufficient evidence. The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether the prosecution presented evidence from which a reasonable jury could find that the essential elements of the crime were proven beyond a reasonable doubt.[2] The appropriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review recognizes the trier of fact's responsibility to reasonably resolve con-

2. Where the defense presents evidence, it is possible that this evidence might, in fact, directly or inferentially support a reasonable finding of guilt. For instance, if a defense witness called to provide alibi evidence actually testified she never saw the defendant the day of the crime, or worse (for the defendant) testified she saw the defendant and victim together shortly before the crime. However, in the present case, the defense presented no witnesses or other evidence. Therefore, the question in this case is whether the prosecution introduced sufficient evidence of guilt for a reasonable or rational jury to find proof of the crime beyond a reasonable doubt. A defendant's guilt beyond a reasonable doubt cannot be rationally or reasonably inferred from his failure to testify or present witnesses, because this would 1) shift the burden of proof from the prosecution to the defendant and 2) violate the defendant's Fifth Amendment right not to testify.

flicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia, supra* at 318, 99 S.Ct. 2781.

■ The reviewing court does not re-weigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). *Kines v. Godinez,* 7 F.3d 674, 678 (7th Cir.1993); *cert denied,* 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994). Determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *United States v. Saunders,* 886 F.2d 56 (4th Cir.1989). The habeas court does not substitute its judgment for that of the finder of fact. *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995).

■ The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz,* 615 F.Supp. 224, 227 (E.D.Mich.1985), *aff'd,* 788 F.2d 400 (6th Cir.), *cert. denied,* 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362(1986). Circumstantial evidence from which a reasonable inference of guilt beyond a reasonable doubt may be drawn is constitutionally sufficient. *Id.; Evans–*

*Smith v. Taylor,* 19 F.3d 899, 909 (4th Cir.), *cert. denied,* 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 211 (1994)(holding that circumstantial evidence that Evans–Smith strangled his wife and staged a fake robbery-rape scene to conceal his crime was insufficient to support his murder conviction).

Petitioner challenges the sufficiency of the evidence to support his second degree murder conviction. This Court must reject his challenge if, considering the evidence in the light most favorable to the prosecution, it concludes that a rational jury could have found that the elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781. In making this judgment, this Court must bear in mind that the beyond a reasonable doubt standard, itself mandated by the Due Process Clause, requires the factfinder "to reach a subjective state of near certitude of the guilt of the accused [and] symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." *Jackson v. Virginia,* 443 U.S. at 315, 99 S.Ct. 2781.[3] *See also, Victor v. Nebraska,* 511 U.S. 1, 14, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)(rejecting a due process challenge to a jury instruction in a criminal case, concluding that, "the reference to moral certainty, in conjunction with the abiding conviction language, impressed upon the factfinder the need to reach a subjective state of near certitude of the guilt of the accused"); *United States*

---

**3.** "In a criminal case [ ] we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty.... In this context, I view the requirement of proof beyond a reasonable doubt in a criminal case as bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free." It is only because of the nearly complete and

long-standing acceptance of the reasonable-doubt standard by the States in criminal trials that the Court has not before today had to hold explicitly that due process, as an expression of fundamental procedural fairness, requires a more stringent standard for criminal trials than for ordinary civil litigation. *In re Winship,* 397 U.S. at 371, 90 S.Ct. 1068(Harlan, J., concurring).

v. Fountain, 993 F.2d 1136, 1139 (4th Cir. 1993); and "Beyond Reasonable Doubt" 68 N.Y.U.L.Rev. 970 (1993)(Newman, J.).

This Court recognizes that the very existence of the Jackson test presupposes that juries accurately charged on the elements of a crime and on the strict burden of persuasion to which they must hold the prosecution, nevertheless may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt. The test was adopted to provide an additional safeguard against that possibility, and gives added assurance that guilt should never be found except on a rationally supportable state of near certitude, that is, proof upon which a rational factfinder could find proof of the crime beyond a reasonable doubt. Evans–Smith v. Taylor, 19 F.3d at 905. Therefore, the question before this Court in the instant case is whether the evidence, taken together and viewed in the light most favorable to the prosecution, could allow any rational trier of fact to conclude beyond a reasonable doubt that Petitioner committed the elements of second degree murder as the principal, or as an aider and abettor. Warren v. Smith, 161 F.3d at 360.[4] In conducting such an inquiry this Court considers all the evidence presented in the record.

Finally, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n. 16, 99 S.Ct. 2781.

██ Petitioner was convicted of second-degree murder. To convict a defendant second-degree murder, it must be shown that the defendant "acted with intent to kill or to inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." People v. Aaron, 409 Mich. 672, 733, 299 N.W.2d 304 (1980). Second-degree murder is a killing committed with malice aforethought, but without premeditation and without deliberation. People v. Morrin, 31 Mich.App. 301, 310–311, 187 N.W.2d 434, 438–439 (1971), leave den., 385 Mich. 775 (1975). Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse (such as insanity) or justification (such as self-defense) or mitigate the degree of the offense to manslaughter. Id.[5]

4. This Court recognizes that, under the AEDPA, habeas relief may be granted only if a state court decision is contrary to controlling United States Supreme Court precedent, an objectively unreasonable application of such precedent, or based on an unreasonable determination of the facts. To warrant habeas relief, a state court adjudication must not be merely incorrect; it must also be objectively unreasonable. Williams v. Taylor, 529 U.S. at 409–411, 120 S.Ct. 1495. The First Circuit has recently stated that habeas review of an insufficiency of the evidence claim involves examining whether the state court decision "is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted[,]" and that "[i]t may be useful, although not mandatory, to review first the underlying constitutional issue, here the Jackson question." Hurtado v. Tucker, 245 F.3d 7, 15 (1st Cir.2001). This Court

disagrees that an additional level of deference to the state court's decision is required in an insufficiency of the evidence claim. Under Jackson, a defendant is only entitled to relief from a jury conviction if the evidence was so deficient that no reasonable or rational jury could have found the elements of the crime beyond a reasonable doubt. Where the evidence presented at trial was so weak that the petitioner is entitled to relief under Jackson, because no rational or reasonable jury could have found proof beyond a reasonable doubt of all the elements of the crime, a state trial or appellate court's decision upholding the defendant's conviction is objectively unreasonable.

5. In People v. Morrin, Justice (then Judge) Levin succinctly defined second-degree common-law murder as follows:

■ The elements of murder are (1) the killing of a human being (2) with the intent to kill, or to do great bodily harm, or with wilful and wanton disregard of the likelihood that the natural tendency of one's actions will be to cause death or great bodily harm. *People v. Kelly*, 423 Mich. 261, 273, 378 N.W.2d 365 (1985); *People v. Spearman*, 195 Mich.App. 434, 491 N.W.2d 606 (1992).

■ The Michigan Supreme Court has summarized the law of first and second degree murder as follows:

What was known at common law as the crime of murder, and what is now known under our statutory scheme as the crime of second-degree murder, M.C.L. § 750.317; M.S.A. § 28.549, is committed only if the actor entertains one of three possible intents: the intent to kill, the intent to inflict great bodily harm, or the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *People v. Aaron*, 409 Mich. 672, 713–714, 299 N.W.2d 304 (1980). In contrast, the statutory crime of first-degree premeditated murder is committed only if the defendant entertains the intent to kill. *People v. Garcia*, 398 Mich. 250, 259, 247 N.W.2d 547 (1976). In addition, the intent to kill in first-degree premeditated murder must be deliberate and premedi-

tated. *People v. Hansen*, 368 Mich. 344, 351, 118 N.W.2d 422 (1962).

*People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984).[6]

■ The requisite intent to be convicted as an aider and abettor is that necessary to be convicted of the crime "as a principal." *People v. Kelly*, 423 Mich. 261, 278, 378 N.W.2d 365 (1985). Malice as used in the context of second-degree murder (or felony murder) is a general intent crime and "if the aider and abettor participates in a crime with knowledge of the principal's intent to kill or to cause great bodily harm, he is acting with 'wanton and willful disregard' sufficient to support a finding of malice under *Aaron*." *Id.* at 278–279, 378 N.W.2d 365.

Defendant was also charged under the aiding and abetting statute, M.C.L. § 767.39; M.S.A. § 28.979, which states: "Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

In *People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393 (1974), the Court explained the term "aiding and abetting":

---

A person who kills another is guilty of the crime of murder if the homicide is committed with malice aforethought. Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter. The intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm. *People v. Morrin*, 31 Mich. App. at 310–11, 187 N.W.2d 434. (Footnotes omitted.)

**6.** Consequently, second-degree murder is always a lesser included offense of first-degree murder. First-degree murder is second-degree (common-law) murder plus an element of either premeditation or the perpetration or attempt to perpetrate an enumerated felony. *People v. Allen*, 390 Mich. 383, 212 N.W.2d 21 (1973). Conversely, second-degree murder is first-degree murder minus premeditation or the enumerated felony. *People v. Carter*, 395 Mich. 434, 437–438, 236 N.W.2d 500, 502 (1975).

In criminal law the phrase "aiding and abetting" is used to describe all forms of assistance rendered to the perpetrator of a crime. This term comprehends all words or deeds which may support, encourage or incite the commission of a crime. It includes the actual or constructive presence of an accessory, in preconcert with the principal, for the purpose of rendering assistance, if necessary. 22 CJS, Criminal Law, § 88(2), p 261. The amount of advice, aid or encouragement is not material if it had the effect of inducing the commission of the crime. *People v. Washburn*, 285 Mich. 119, 126, 280 N.W. 132 (1938).

*See also, People v. Cortez*, 131 Mich.App. 316, 333, 346 N.W.2d 540 (1984).

▆▆▆▆ Aiding and abetting describes all forms of assistance given to the perpetrator of a crime and includes all words or acts that might support, encourage, assist, or incite the commission of a crime. To support a finding that the defendant aided and abetted a crime, the prosecutor must prove beyond a reasonable doubt that: (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted, supported, encouraged, or incited the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended its commission at the time he gave aid and encouragement. *People v. Carines*, 460 Mich. 750, 757–58, 597 N.W.2d 130, 135–36 (1999). *See also, People v. Wilson*, 196 Mich.App. 604, 614–15, 493 N.W.2d 471, 476–77 (1992).

▆▆▆▆ In the present case, the prosecutor maintained that Petitioner could be found guilty of second degree murder either as the principal, or as an aider and abettor. Overwhelming evidence showed beyond a reasonable doubt that the victim, Donald Wright, was murdered, shot to death in his car while sleeping (or immediately upon awakening) in his car outside his place of employment. Overwhelming evidence also showed beyond a reasonable doubt that both Petitioner and his co-defendant Toby Roger Davis participated in the murder and that both fired a shot at the victim.

As noted by the Michigan Court of Appeals, the evidence of which shooter fired the fatal shot was mixed. However, as also noted by the Michigan Court of Appeals, there was ample evidence to support Petitioner's conviction of second degree murder as an aider and abettor. There was, in fact, overwhelming evidence that Petitioner either aided and abetted Toby Roger Davis in murdering Donald Wright (if Davis fired the fatal shot), or that Petitioner killed Wright himself.

Petitioner does not dispute that he rode around armed with a handgun while Davis drove his car to the place where Donald Wright was accosted and killed. Moreover, Petitioner does not dispute and the evidence was overwhelming that, only seconds after Toby Davis accosted Wright and fired a shot at him from point blank range, Petitioner did the same. This evidence was more than sufficient to allow a rational jury to conclude beyond a reasonable doubt that Petitioner performed acts that assisted, supported, encouraged, or incited Davis to attack and shoot at Wright. Petitioner's acts of approaching Wright and shooting at him at very close range also provided overwhelming evidence that Petitioner intended to kill or do great bodily harm to Wright; thus, Petitioner himself demonstrated the intent necessary to support his second-degree murder conviction. Accompanying Davis to the scene of the crime while armed, rapidly following him to accost the victim and shooting at the victim moments after Davis did shows that Petitioner was in

league with Davis in the murderous enterprise. It was not necessary for Petitioner to have fired before or simultaneously with Davis for a rational jury to infer from the evidence that Petitioner gave substantial assistance, support, encouragement, and incitement to Davis. Nor was it necessary for any witness to testify as to what verbal encouragement Petitioner may have given Davis before the shooting. Petitioner's deeds provided overwhelming evidence that he aided and abetted his co-defendant in the second degree murder of Donald Wright.

The fact that Petitioner ran up to Donald Wright's car and shot at him moments after Davis did and the possibility that Wright may already have been dead or dying when Petitioner fired his gun does not mean that a rational jury could not infer from these facts that Petitioner gave Davis encouragement and assistance in murdering Wright. On the contrary, Petitioner's acts provided compelling evidence from which a rational jury could conclude that he assisted and encouraged Davis in the killing *before* Davis approached Wright and shot at him and that Petitioner intended to kill or do great bodily harm to Wright. Petitioner could well have been convicted of first degree felony murder. This Court concludes that the Michigan Court of Appeals' decision that Petitioner's second degree murder conviction is supported by constitutionally sufficient evidence is an objectively reasonable application of controlling federal law. Petitioner's claim that his murder conviction is supported by insufficient evidence because it was not clearly established that he fired the shot which killed Donald Wright lacks merit and does not warrant habeas corpus relief.

## VII. Conclusion

Based on the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**