# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LONDELL BARNARD WILLIAMS JR.,

Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 328521
Genesee Circuit Court
LC No. 14-036121-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAHEEN AKEEM DUDLEY,

Defendant-Appellee.

No. 328568
Genesee Circuit Court
LC No. 14-035847-FC

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In Docket No. 328521, defendant Londell Barnard Williams Jr. was convicted, following a jury trial, of eight counts of armed robbery, MCL 750.529, three counts of assault with intent to commit armed robbery, MCL 750.89, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Williams as a second habitual offender, MCL 769.10, to serve concurrent terms of imprisonment of 20 to 40 years each for the robbery and assault convictions, plus a consecutive term of two years for the felony-firearm conviction. In Docket No. 328568, defendant Raheen Akeem Dudley was convicted, following the same jury trial, of ten counts of armed robbery, assault with intent to commit armed robbery, and felony-firearm. The trial court sentenced Dudley to serve concurrent terms of imprisonment of 15 to 30 years each for the robbery and assault convictions, plus a consecutive term of two years for the felony-firearm conviction. Both defendants now appeal by right. We affirm.

-1-

# I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from an armed robbery that took place at the Hometown Inn in Flint Township in January 2013. The prosecution's theory of the case was that several young people were having a party in a room at the Hometown Inn when defendant Williams arrived, immediately went into the bathroom to make a cell phone call, and then opened the door for three or four masked gunmen. The gunmen did not threaten Williams, but took valuables from the others, after which Williams left with the assailants. The prosecution posited that Williams was acting as "the Trojan horse" for the assailants, and that Dudley was among the masked gunmen.

Several witnesses testified to attending a party of just over a dozen teenagers beginning on the evening of January 21, 2013. After leaving two earlier venues, they reconvened briefly at a McDonald's, and later at the Hometown Inn. Some witnesses testified that both defendants had appeared at one of the earlier locations. One witness explained that the group had gone to McDonald's because they were not well acquainted with Williams and his companions, and did not want to socialize with them. However, according to the testimony, Williams rejoined the party after it had reconvened at the Hometown Inn and, just after talking on the telephone, opened the door to three or four men who had covered their faces and were brandishing guns, and who demanded cell phones and other property from the victims.

One witness testified that one of the assailants asked Williams to collect some of the stolen property while pointing a gun at him, and another opined that Williams's expressions at the time indicated that he was a reluctant participant. The several remaining eyewitnesses, however, consistently testified that Williams was never threatened, appeared neither surprised nor afraid, and left with the robbers after asking them to return a cell phone taken from Williams's cousin, which they did.

Three witnesses identified Dudley as among the armed and masked intruders, each relying in part on their recognition of some of his clothing from the encounter at an earlier party venue. The next morning, Dudley was part of a group who sold one of the stolen cell phones at a cell phone store.

The defendants were convicted and sentenced as described above. On appeal, Williams argues that he did not have the benefit of effective assistance of counsel at trial. Williams additionally argues, in his Standard 4 brief,[1] that the evidence was insufficient to prove his intent as an aider and abettor of a robbery. Dudley argues that the evidence was insufficient to prove his identity as one of the armed assailants, that the presentation to the jury of a recording of his interview with two police detectives denied him a fair trial, and that the cumulative effect of

---

[1] An appellate brief filed in propria persona by a criminal defendant pursuant to Administrative Order No. 2004-6.

certain alleged instances of prosecutorial misconduct was also to deny him a fair trial. After filing his claim of appeal, Williams moved this Court to remand for a *Ginther*[2] hearing regarding Williams's claim of ineffective assistance of counsel, which motion this Court granted.[3] The trial court held a *Ginther* hearing and concluded that Williams had not met his burden of proving that his counsel's performance was objectively unreasonable and prejudicial.

## II. DEFENDANT WILLIAMS (DOCKET NO. 328521)

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

This Court's review of a trial court's decision following an evidentiary hearing on the question of trial counsel's effectiveness presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, and the legal aspect is reviewed de novo. *Id*.

To prove ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to result in deprivation of a fair trial. *Strickland v Washington*, 466 US 668, 687-688, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). To demonstrate prejudice, a defendant must show that the result of the proceeding was fundamentally unfair or unreliable, and that but for counsel's poor performance the result would have been different. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997).

Williams argues that his trial counsel's performance was deficient for his failure to (1) present a duress defense and request an appropriate jury instruction, (2) prepare for trial, including by seeking a separate trial, while putting his energies instead into attempting to work out a plea deal, (3) challenge the admissibility of a recording of a telephone call that was inadmissible and unintelligible, and (4) ask the trial court at sentencing to consider such mitigating factors as Williams's youth. The trial court held a *Ginther* hearing regarding Williams's claim for ineffective assistance of counsel and concluded that Williams had not met his burden of proving that his counsel's performance was objectively unreasonable and prejudicial. We agree with the trial court for the reasons stated below.

### 1. DURESS

Williams argues that his trial counsel was ineffective for failing to present a duress defense and for not requesting a jury instruction on the affirmative defense of duress. We disagree. Jury instructions should cover all material issues, defenses, and theories that have evidentiary support. *People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994).

---

[2] See *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[3] *People v Williams*, unpublished order of the Court of Appeals, entered February 24, 2016 (Docket No. 328521).

At the *Ginther* hearing, Williams's trial attorney testified that ten or more witnesses had testified that defendant Williams played no part in taking property from the victims, which counsel preferred to emphasize, rather than admit that Williams did take part in the robbery but did so under duress. As the trial court noted, counsel "certainly argued vigorously that the proofs were deficient and that the People had not proved beyond a reasonable doubt that . . . Williams had participated." Arguing that defense counsel should have conceded that Williams participated in the robbery while protesting that he did so under duress, instead of taking advantage of the great majority of witnesses who did not describe any such participation on Williams's part at all, to suggest in the main that the prosecution had failed to prove such participation beyond a reasonable doubt, is simply arguing that defense counsel should have emphasized one instead of another of two incompatible defenses. Williams's argument is therefore essentially that defense counsel should have chosen a different defense from two valid but incompatible defenses. This Court will neither substitute its judgment for that of counsel regarding matters of trial strategy, nor assess counsel's competence with the benefit of hindsight. *People v Barnett*, 163 Mich App 331, 338; 414 NW2d 378 (1987).

Further, while trial counsel did make reference to Williams being under duress in his closing argument, it is clear from context that the argument was meant to counteract the testimony of a witness, rather than an actual assertion of the affirmative defense of duress:

> If you believe the one witness then I guess he gathered up the stuff. But the other thing about her was she testified that she believed that he gathered the stuff up because a gun was being pointed at him. That means he was not doing it under his own volition, he was under the same threat of force as the others.

We conclude that Williams's trial counsel was not ineffective for choosing to pursue the defense of non-involvement over the defense of duress, and for not requesting a jury instruction on the defense that counsel did not advance.

## 2. TRIAL PREPARATION AND SEVERANCE

Williams argues that his counsel was not prepared for trial and was ineffective for not seeking severance of his trial from Dudley's. We disagree. A defendant arguing that he received the ineffective assistance of counsel must overcome a strong presumption that counsel's tactics were matters of sound trial strategy. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). To overcome that presumption regarding a claim of failure to prepare for trial, the defendant must show that counsel's failure resulted in counsel's remaining ignorant of, and thus failing to present, evidence that would have substantially benefitted him. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

On the motion of any party, a trial court "may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." MCR 6.121(D). Although "a joint trial of codefendants presenting antagonistic defenses has serious negative implications for the accused," severance is required only where the defense "clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hanna*, 447 Mich 325, 346-347; 524 NW2d 682 (1994).

In this case, Williams's trial counsel testified at the *Ginther* hearing that there was a plea offer from the prosecution to reduce the numerous armed robbery charges to a single count of unarmed robbery, to dismiss the felony-firearm charge, and to forego habitual offender sentencing. Trial counsel testified that he advised his client to accept the offer, in light of the strength of the prosecution's case. According to counsel, Williams initially decided to accept the offer, but then changed his mind and demanded a preliminary examination. Counsel reported that there were continuing plea negotiations, but that no specific new offer was put forward.

Trial counsel denied that his attempts to secure a plea bargain interfered with his trial preparation:

> In preparation for trial . . . I looked at the preliminary exam transcripts, the police reports. Also, I went over to the jail and spoke to Mr. Williams with respect to questions or concerns that he had regarding what potential witnesses may testify to and what questions that he wanted to have asked.

Counsel further testified that Williams suggested no witnesses for him to call, and added that he was familiar with codefendant Dudley's interview with the police, in which Dudley did not indicate that Williams was involved with the robbery. Counsel testified that he saw nothing mutually exclusive about the two defendants' respective defenses, and so believed that a motion for severance would not have been successful.

The trial court held that "the record does not show that [defense counsel] did not prepare for the trial just because he's working out a plea agreement," and that counsel "certainly was here ready in all respects" and did in fact present "a very vigorous defense." The court added that counsel did not err by declining to seek severance, because "there was no statement given by Mr. Dudley to implicate Mr. Williams and vice versa," there that "there were no irreconcilable defenses that were likely to lead to an order from the Court to sever the cases for trial."

On appeal, Williams argues that trial counsel overlooked the availability of a defense based on duress and failed to consider how the pursuit of that defense would have justified severing the claims against the two defendants for separate trials. Williams points out that one witness testified that one of the robbers pointed a gun at Williams, and suggests that this description created an opportunity for a defense that implicated Dudley. Williams also argues that he had nothing to gain, and much to lose, from a single trial, because much of the evidence "implicated Mr. Dudley and had nothing to do with Mr. Williams," and that "where witnesses testified they saw Mr. Williams speak to Mr. Dudley during the night, there was a substantial likelihood that Mr. Williams would be convicted because of the unfairly prejudicial effect of that evidence and a sense that Mr. Williams must be guilty by association."

We are not persuaded by these arguments that the jurors ignored their instructions on the elements of the crimes and simply convicted Williams because of his apparent association with Dudley. And we find no clear error in the trial court's finding that defense counsel in fact presented a vigorous defense despite having urged Williams to take the plea deal.

Further, Williams's defense that he was not a participant in the robbery was not antagonistic to Dudley's defense that he was misidentified and was not one of the masked

assailants. Further, even if Williams's counsel had advanced the alternative defense of duress, severance would not have been required. The testimony of one witness suggesting that one of the assailants threatened defendant Williams with a gun, along with the testimony of another that Williams's facial expressions clearly indicated that he did not want to participate in the robbery, could have been used to support a defense of duress. However, Dudley's defense was that he was not involved in the robbery at all; his counsel focused on the weaknesses in the witnesses' identifications of Dudley. Thus, had Williams presented the defense that the robbers had forced him to participate in the robbery under duress, this defense would not have been antagonistic to Dudley's defense that he was not present at the robbery and that the witnesses had mistakenly identified him. The defenses of the two defendants in this case were not mutually antagonistic, and even if Williams's counsel had chosen to assert the defense of duress, such a defense would not have been antagonistic to Dudley's or vice versa. Therefore, a motion for severance would have been futile. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). For these reasons, Williams fails to show that defense counsel performed deficiently by declining to request separate trials.

### 3. JAIL RECORDING

Williams argues that trial counsel was deficient for failing to object to the prosecution's request to play a recording, made while Williams was in jail, of Williams's phone conversation with his father, in which he stated that he was "here for . . . that shit that happened last year . . . for that robbery."

At the *Ginther* hearing, defense counsel explained that he thought that the recording was admissible as an admission by a party opponent, see MRE 801(d)(2)(A); consequently, rather than seeking to exclude it entirely, he was satisfied to minimize the jury's exposure to it by agreeing to have it played once but not admitted into evidence. The trial court confirmed that the prosecuting attorney and defense counsel "had a compromise here," stating:

> We're gonna play it once. It won't be given to the jury so they can look and hear it as an exhibit as they would other items that might be introduced during a trial. And it appears to this Court that that also was not an outcome determinative decision because I think it was a fair compromise that he worked out with [the prosecuting attorney]. So the evidence was there for the prosecutor to argue, but on the other hand it was not there to be replayed numerous times.

The trial court did not err by recognizing as legitimate strategy defense counsel's decision to agree to a limited presentation of the recording rather than risk having the prosecution make more damaging use of it as a consequence of an unsuccessful effort to bar its admission entirely. See *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984) (it is not ineffective assistance of counsel for defense counsel to concede damaging information in hopes of lessening its impact on the jury).

## 4. FAILURE TO ARGUE MITIGATION AT SENTENCING

In his original brief on appeal, Williams argued that defense counsel had failed to argue mitigating factors at sentencing, or to rebut the prosecution's argument that Williams's youth was reason for a harsher sentence. However, in his supplemental brief after remand, Williams states that "Mr. Williams does not challenge the trial court's order denying his Motion for Resentencing." Williams has thus affirmatively waived this portion of his challenge to trial counsel's performance. See *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000).

In any event, we find Williams's argument meritless, as the difference in sentences received by Williams and Dudley is most likely the result of Williams being sentenced as a habitual offender while Dudley was not.

For these reasons, we reject Williams's argument that his trial attorney failed to provide effective assistance of counsel.

## B. SUFFICIENCY OF THE EVIDENCE

Williams also argues in his Standard 4 brief that the evidence presented at trial was insufficient to convict him on an aiding and abetting theory. We disagree. Whether the prosecution presented sufficient evidence to support a guilty verdict is a question of law that we review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001); *People v Medlyn*, 215 Mich App 338, 340-341; 544 NW2d 759 (1996). When reviewing the sufficiency of evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994); *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998).

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." MCL 767.39.

> A conviction of aiding and abetting requires proof of the following elements: (1) the underlying crime was committed by either the defendant or some other person, (2) the defendant performed acts or gave encouragement that aided and assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement. [*People v Smielewski*, 235 Mich App 196, 207; 692 NW2d 636 (1999).]

The intent element may be satisfied by proof that the defendant had a specific intent to commit the crime, that the defendant had knowledge of the principal's intent, or that the criminal act committed by the principal was an incidental consequence that might reasonably have been expected to result as a natural and probable consequence of the intended wrong. *People v Robinson*, 475 Mich 1, 6-7, 9; 715 NW2d 44 (2006).

Williams argues that the evidence showed no more than that he was present when the robbery took place, and that the jury no had basis to believe that he acted with the intent to aid and abet the robbery. We disagree.

"Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992). However, any advice, aid, or encouragement, however slight, if effective, is sufficient to establish guilt on an aiding and abetting theory. *People v Washburn*, 285 Mich 119, 126; 280 NW 132 (1938). "An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citations omitted).

Viewed in the light most favorable to the prosecution, the evidence shows that Williams succeeded in making his way into a party among persons with whom he was not generally well acquainted, then secluded himself to talk on the telephone, immediately after which he opened the door to the armed and masked intruders. Williams stood by showing no sign of fear or surprise during the succeeding robbery of the other party-goers, and the robbers neither robbed nor threatened him. He then persuaded the robbers to return the cell phone taken from his own cousin, after which he followed the robbers out of the room. This evidence was sufficient to permit a reasonable factfinder to conclude that Williams acted with the intent to facilitate the commission of a robbery. The prosecution thus presented sufficient evidence to support the intent element under its aiding and abetting theory.[4]

Williams also argues that his trial counsel was ineffective for not having investigated pertinent telephone records to ascertain to whom he was talking by cell phone just before the robbery. However, Williams frames this issue as a challenge to the sufficiency of the evidence, not to the effectiveness of defense counsel. We need not address arguments not germane to the issue as set forth in the statement of questions presented. *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000). In any event, we find his argument unpersuasive. Defense counsel may well have preferred not to discover and introduce into evidence the pertinent telephone records for fear that the information would have been damaging to Williams. See *Henry*, 239 Mich App at 146 (counsel's tactics are strongly presumed to follow from sound strategy).

For these reasons, we reject Williams's challenge to the sufficiency of the evidence to support his convictions on an aiding and abetting theory.

---

[4] Williams in his Standard 4 brief frames his question presented to include the alternative theory that the verdict was contrary to the great weight of the evidence, but offers no substantive argument in connection with that claim, thus abandoning it. See *People v Jones (On Rehearing)*, 201 Mich App 449, 456-457; 506 NW2d 542 (1993).

III. DEFENDANT DUDLEY (DOCKET NO. 328568)

Dudley argues that the evidence of his identity as one of the masked robbers was insufficient to support his conviction, that the trial court erred by admitting into evidence an audio recording of his police interrogation, and that the cumulative effect of errors in his trial resulted in an unfair trial. We disagree for the reasons stated below.

A. SUFFICIENCY OF THE EVIDENCE

Dudley argues that all of the witnesses testified that the robbers had covered their faces, and thus that the prosecution had to prove his identity as one of them by means other than facial recognition from that event. Dudley contends that the prosecution failed to do so.

The identity of the offender is an element of every crime. *People v Yost*, 378 Mich App 341, 356; 749 NW2d 753 (2008). The accounts of a single eyewitness can suffice to persuade a jury of a defendant's guilt beyond a reasonable doubt. See *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976). Even where the witnesses' identification of the defendant is less than positive, the question remains one for the jury. *People v Abernathy*, 39 Mich App 5, 7; 197 NW2d 106 (1972). "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

Again, three eyewitnesses identified Dudley as one of the robbers from having seen him earlier on the day of the robbery when his face was not covered, and having noticed that one of the masked robbers was wearing clothing similar to what Dudley was wearing on the earlier occasion. For each witness, the two sightings occurred within hours of each other. Further, one of those witnesses testified that she was already familiar with Dudley from having watched him play basketball, and another testified that she was already familiar with Dudley from school.

Dudley argues that the witnesses who identified him noted similarities in pants and shoes only, with none describing similarities in connection with a shirt, jacket, or hat. But, and again viewing the evidence in the light most favorable to the prosecution, the witnesses' failure to describe every piece of clothing worn by Dudley does not invalidate their identifications. Often eyewitnesses will remember one or two distinctive features of a person, rather than accurately recalling everything about them.

Dudley further argues that the witnesses' testimony conflicted, inasmuch as one witness described tan jeans and white shoes, another described tan jeans without specifying the color of the shoes, and the third described jeans without specifying their color. None of this testimony actually conflicts; it merely reveals a different level of detail in each of the witnesses' memories. The only real conflict in the witness descriptions was that two witnesses specified Air Force One shoes, and the third specified Timberland boots, but that amount of discrepancy does not prevent a reasonable factfinder from treating the identifications as valid.

Dudley also points out that the one other witness who testified about the colors of the robbers' clothing stated that all wore dark clothing. In fact, that witness, when asked "Were all of the individuals wearing dark colored clothing?," answered "I think," then "I believe so."

Agreeing that all the robbers wore dark clothing is not asserting that each wore exclusively dark clothing. Further, the one witness's description of tan jeans did not specify how light or dark a shade of tan, and her description therefore did not necessarily conflict with the general description of dark clothing.

Dudley additionally states that "[t]here was no comparing the Defendant's physical features, such as height, or weight, or build to the allegedly similarly-panted robber[.]" However, one of the eyewitnesses who identified Dudley testified that she was familiar with his physical build, and that the robber exhibiting similar clothing also presented a similar build.

Finally, Dudley argues that the evidence that he sold one of the stolen telephones is not sufficient to prove that he committed the robbery, unless other facts and circumstances tie him as the possessor of the phone to the crime itself. However, the three witness identifications sufficiently support Dudley's possession of the stolen property to implicate him in the robbery. Dudley additionally argues that the evidence that he was present at the phone store did not itself implicate him in the theft of a particular phone, and that the eight hours separating the robbery from his appearance at the phone store gave him ample time to obtain the phone by means other than having participated in the robbery. However, " '[e]ven in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide.' " *People v Hardiman*, 466 Mich 417, 424; 646 NW2d 158 (2002), quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). We hold that the prosecution satisfied its burden.

For these reasons, we reject Dudley's arguments concerning the sufficiency of the evidence of his identity.

## B. RECORDING OF POLICE INTERVIEW

Dudley next argues that the trial court erred by allowing the jury to hear a recording of his interview with two police detectives, on the grounds that this evidence was confusing and misleading, that it shifted the burden of proof to the defense, and that its potential for unfair prejudice substantially outweighed its probative value under MRE 403.

Dudley's trial counsel did not object to the admission of this evidence at trial. The decision whether to admit evidence is within the trial court's discretion and is normally reviewed on appeal for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). But we review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Where plain error is shown, the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id*.

At trial, the recording of Dudley's interview with police detectives was played for the jury. One of the interviewing detectives then summarized the interview, testifying that Dudley (1) initially stated that he did not know where he was on January 21, 2013, (2) then "changed his story to [state that] he had been at a party . . . , took the bus back to the west side of Flint, and went home," and (3) then "changed his story again to [state that he was] at the party, ran into a

-10-

guy that recognized him as a basketball player," then left the party after a short time to take the bus home, where he "got a call from a friend of his in the morning," after which "[t]hey came and picked him up, took him to [the phone store]. He went in there and they gave him some cell phones. He looked at them, gave the phones back . . . and then they sold the phones." The detective continued that he showed Dudley an image from Twitter, and that Dudley denied, then admitted, that he was depicted in it. The detective reported that testing of the cell phone in evidence yielded no fingerprints, but that Dudley admitted having handled it.

Dudley argues that, during the interview, the detectives lied about the evidence and repeated hearsay that was not admitted at trial, and that the jury should have been precluded from hearing these statements. Dudley concedes that it is not necessarily improper for the police to lie to a suspect in hopes of gaining a confession, but argues that "it is one thing to lie to a suspect to gain a confession and another thing to parade those lies in front of the jury as true." Dudley further argues that "[t]he confusion was further compounded by the fact that the trial court gave no contemporaneous cautionary instruction or explanation to the jury regarding its use of the interview." However, no such instruction was ever requested. In any event, our reading of the transcription of the interview leaves us with the impression that the recording only mildly supplemented the trial testimony and introduced no new witness accounts or new prosecution theories. Accordingly, even if defense objections or requests for special instructions might well have refined the presentation or use of the recording, it was not plain error for the trial court to decline to give a cautionary instruction sua sponte. Further, the jury was aware that detectives suspected Dudley of the robbery at the Hometown Inn and were attempting to secure his confession. We conclude that any incidental hearsay or untruths the jury might have heard did not result in plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Dudley additionally argues that the presentation of the recording shifted the burden of proof to the defense, because the detectives asked him during the interview to comment on the credibility of witnesses, and to admit his guilt or prove his innocence. The jury was aware that the interview had taken place outside a courtroom and that statements that the detectives and defendant made during the interview were not sworn testimony. Further, the trial court instructed the jurors on the presumption of innocence and the prosecution's burden of proof, and that they alone were the judges of credibility. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008).

For these reasons, we hold that the admission of Dudley's interview did not result in plain error affecting his substantial rights.

## C. CUMULATIVE/PROSECUTORIAL ERROR

Finally, Dudley asserts that the prosecution committed three errors[5], the cumulative effect of which was to deny him a fair trial. We disagree.

Claims of cumulative error are reviewed to determine whether the combination of alleged errors resulted in the denial of a fair trial. *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). However, Dudley's trial counsel did not object to any of the alleged errors at trial. "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008) (internal quotation marks and citation omitted).

Dudley first asserts that the prosecution engaged in misconduct by introducing the recording of defendant's interview with the two police detectives. However, "[a] finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003). Because we concluded in Part III-B above that Dudley failed to demonstrate plain error, we also conclude that the prosecution showed no bad faith in offering that evidence for admission.

Dudley also argues that the prosecution erred by stating to the jury regarding the recorded interview, "You're going to hear the tape skip a little where we're jumping ahead. There's some irrelevant information discussed that's something the defense . . . and I have agreed on it's probably better that you don't hear." Dudley argues that the prosecution thus implied that there was something prejudicial on the recording that the defense did not want the jury to hear. We disagree. The prosecution merely stated that the skipped portion was "irrelevant information" that the defense and the prosecution had agreed not to play for the jury. There was no reason for the jurors to presume that information that both parties had agreed to leave out of the trial would have been prejudicial to Dudley.

Finally, Dudley argues that the prosecution erred during closing argument by stating: "And I also kind of thought it was convenient that the moment we asked him, well we gonna be able to verify your story that these guys called you; oh, no that—those numbers are deleted, okay." The prosecution added, "Now that . . . statement's convenient for him." Dudley maintains that this commentary by the prosecution implied that Dudley has failed to satisfy some duty to produce evidence. Examining the remark in context, however, it is clear that the

---

[5] Dudley refers to these errors as "prosecutorial misconduct." This Court held in *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015), that the term "prosecutorial error" is preferred over the more commonly used phrase of "prosecutorial misconduct," which should be reserved for only the most extreme cases when a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct. See also *People v Bosca*, 310 Mich App 1, 25–26; 871 NW2d 307 (2015) (applying the *Cooper* distinction). Accordingly, we will adopt this same convention.

prosecution was merely pointing out that when the police interrogators put forward a way to test some part of Dudley's version of events, he claimed that the numbers had been deleted, and thereby thwarted police efforts to verify his story about how he had come to possess a stolen phone. Pointing out the weakness of a defendant's theory of the case is not prosecutorial error. See *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995) ("where a defendant . . . advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant.").

For these reasons, we find Dudley's arguments relating to cumulative error, or prosecutorial error, unpersuasive.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly